The decree is therefore affirmed.

---

## St. Louis, Iron Mountain & Southern Railway Company v. Pape.

### Opinion delivered July 3, 1911.

1. COMMERCE—VALIDITY OF LIMITATION OF CARRIER'S LIABILITY.—Under the Interstate Commerce Act (of February 14, 1887), with the amendments thereto (U. S. Comp. Stat. Supp. 1907 p. 909; Supp. 1909, p. 1166), any contract limiting the liability of a carrier of property transported in interstate commerce in case of loss to certain specified maximum amounts is void. (Page 276.)

2. EVIDENCE—RES GESTAE.—Testimony as to a conversation between plaintiff's agent and another as to the cause of the fire which destroyed plaintiff's property, while it was being transported by defendant, was inadmissible as part of the res gestae where the conversation was had after the latter had walked 48 car lengths, and after he had informed the former of the fire. (Page 276.)

3. CARRIER—NEGLIGENCE—BURDEN OF PROOF.—By the common law, a common carrier is in effect an insurer of goods intrusted to it for carriage, while the same are in transit except when the loss occurs by the act of God, of the public enemy, of public authority, of the shipper, or from the inherent nature of the goods; and the burden of proving that the loss arose from any of those excepted acts rests upon the carrier, even though the shipper accompanies the goods; and it is only where the shipper claims that the carrier was negligent in not avoiding or lessening the damage after it had arisen from an act of the shipper that the burden of proof rests upon the shipper to prove such negligence. (Page 279.)

4. INSTRUCTIONS—SPECIFIC OBJECTION.—Objection to the mere phraseology of an instruction should be specific. (Page 283.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, H. S. Powell* and *James H. Stevenson,* for appellee.

■ 1. In so far as the verdict was based on the theory that the fire was started by a spark or sparks from one of the locomotives, it is wholly unsupported by the evidence and contrary to the physical probabilities.

2. When the shipper or his agent accompanies the goods, and fire breaks out under circumstances not reasonably attributable to any act of the carrier, its insurance liability ceases with the cessation of the reason thereof, and the burden devolves upon the shipper, upon the presumption that his agent in charge has more knowledge of how it occurred than any one else, casting the burden upon him to explain, by a preponderance of the evidence, that it arose out of a cause not traceable to the act of the agent. 52 N. H. 355, 13 Am. Rep. 42; 3 Cliff. 184.

Notwithstanding the carrier's liability as an insurer, it cannot be held liable if the negligence of the shipper or his agent caused or contributed to the fire. 1 Hutchinson on Carriers, § 265; Id. § § 328, 333; 8 Carr. & P. 207; 26 Ark. 3, 7; 50 Ark. 397, 415; 68 Ark. 218; 56 Ark. 425; 83 S. W. 253; 22 S. W. 347; 4 O. St. 741; 60 S. E. 1018; 69 Ia. 485, 487; 134 S. W. 613, 617; 129 S. W. 762, 763.

On the question of the burden and presumption where the shipper or his agent accompanies the goods, see, in addition to authorities cited above, 104 Ia. 659, 74 N. W. 192; 128 N. W. 663, 667.

3. The testimony of the witness Hobby, as to statements made to him in the caboose by Rose, shortly after the discovery of the fire, and also as to similar statements made by the latter to Denton and the conversation between them, ought not to have been limited to the impeachment of Rose. Under the facts, conditions and circumstances, these statements were a part of the res gestae, and should have been admitted for whatever they might be worth as explaining the cause. The fact that Rose denied making the statements did not detract from their admissibility. 18 Col. App. 170; 32 Pac. 63; 76 N. E. 551; 89 S. W. 158; 94 S. W. 345; 93 S. W. 1089; 77 Ark. 599; 85 Ark. 479; 109 S. W. 430; 43 Ark. 104; 123 Ga. 205, 51 S. E. 328; 53 Neb. 674; 69 Neb. 456, 95 N. W. 1057; 54 Neb. 299; 74 Neb. 627; 104 N. W. 1056; 108 Pac. 593; 67 S. E. 899; 110 Pac. 20; 109 Pac. 10; 16 Cyc. 1241,

1248, 1251, 1254;   14 Ark. 86;   104 Pac. 736;   133 Ind. 243, 31 N. E. 180, 19 L. R. A. 723;   127 N. W. 272.

4. The first and fourth instructions given for appellees were erroneous in that they misstate the law as to the presumption of negligence and burden of proof, and they make the shipper's responsibility depend upon the negligent quality of the acts of those accompanying the car, instead of upon the question of whether or not, regardless of their negligence, their acts caused the loss.   See authorities cited above, particularly 26 Ark. 3, 7;   50 Ark. 397;   74 N. W. 192; 128 N.W.663.

*William H. Arnold,* for appellees.

1. The shipper's attention was not called to the statement stamped on the face of the bill of lading, that "the value of the shipment covered by this contract is fixed by the shipper at $5.00 per cwt.;" he had no contract or agreement with the railway company.   The papers were prepared by the agent and delivered to the son of the shipper who had only forty minutes in which to load the stock, and in the rush the papers were signed as prepared.   Appellees are not bound by that stipulation.   91 Ark. 97.

2. Rose was not in the car by permission either of the plaintiffs or of Denton;   but the proof is that he slipped into the car without the knowledge or consent of the plaintiff, and that Denton did not discover him in the car until during the night after the day of shipment.   The proof is further that he remained in the car and did not interfere with anything; that he had no matches, did not smoke, but was asleep during all the night preceding the fire and awoke after the car was afire, and had to run through the flames in order to escape.

The lantern was securely fastened in the ceiling of the car with two nails, the heads thereof bent back to the ceiling so that the lantern could not fall or be taken down.   It was lit only for the purpose of feeding the stock, and always turned out when that was done.   Under the testimony of appellant's own witness it is clear that the lantern did not cause the fire, because, while he testifies that the lantern was sitting on a bale of hay, he states that he does not know whether it was lit or not, and that *the bale of hay on which it sat was not on fire.*

3. The testimony of Hobby relative to statements of .

Rose was not admissible except for the purpose of impeaching Rose. It was certainly not admissible as *res gestae.* 50 Ark. 397.

4. The evidence justifies the conclusion that the fire was caused by sparks emitted from some one of the passing locomotives of appellant.    59 Ark. 317;  77 Ark. 434;  76 Ark. 132; 89 Ark. 273;  92 Ark. 569.  The only exception to appellant's liability insisted on by it is that provision in the bill of lading exempting it in case of loss or damage occasioned by the act or default of the shipper or owner, and it is conclusively shown by the testimony both of Denton, appellee's agent, and of Rose, that there was nothing done by either of them that caused the fire, and this testimony was uncontradicted.  If there was any burden resting upon plaintiffs to show that Denton did not set the car on fire, that burden was discharged by this testimony.  And appellant was not prejudiced by the court's holding that the burden was on it to show that the loss of the car was due to the negligence of Denton or Rose.  Moreover, under its liability as an insurer the burden was upon appellant to maintain its defense.  94 Ark. 407;  *Id.* 103; 91 Ark. 97;  89 Ark. 154;  127 S. W. 464;  123 S. W. 775;  130 S. W. 562.

Where, as in this case, the carrier in its answer alleges negligence against the shipper and relies upon it as an exception to its liability, the burden of proving that allegation is upon the carrier.  Hutchinson on Carriers (3 ed.), § § 449, 1354.

FRAUENTHAL, J.  These were six separate actions instituted by the appellees to recover the value of a lot of personal property which was destroyed by fire while being transported by appellants as a common carrier.  The property consisted of a lot of household goods, wearing apparel, and some live stock, portions of which were owned by the several appellees, and shipped in the same car and destroyed on the same occasion.  The property was carried under the same contract of shipment in the name of one of the appellees as consignee, but for the benefit of all of them, who paid their respective portions of the freight charges.  The six actions were consolidated for trial.

On February 11, 1910, the property was delivered to the Louisville & Nashville Railroad Company at McLeansboro, in the State of Illinois, to be transported to Ogden, in the State

of Arkansas, and a bill of lading was duly issued therefor by the initial carrier. At the same time a contract known as a "live stock contract" was executed and also signed by the shipper, which provided that the "shipper or his agent or agents in charge of said animals shall ride upon the freight train upon which said animals are transported." The property was shipped in a box car, in which there was no opening except through sliding doors upon each side. The household goods were placed in one end of the car and the stock was placed in the other, and between the two and the doors was placed a quantity of hay and other feed stuffs.

The shipper employed one Ed. Denton to accompany the property, and he rode in the car with it. It appears that a boy named W. H. Rose, who was well acquainted with the shipper, desired to go to Arkansas, and, without the knowledge or consent of the shipper or Denton, stowed himself away in the car and travelled with the shipment.

Denton took with him a coal oil lantern, which he fastened to studding upon the upper side of the car, and lighted same at certain hours when it was dark, in order to feed the stock.

The car and property were duly transported over the line of railroad of the initial carrier to St. Louis, Missouri, and were there delivered to the appellants as connecting carriers, who undertook to transport same over their own line from St. Louis to Ogden. The train left St. Louis about 6 o'clock P. M. of February 12, and arrived at a point on appellant's railroad known as Gad's Hill, about 5 o'clock A. M. of February 13, when the car containing this property was discovered to be on fire, and the property was thereby destroyed. It appears from the testimony on the part of appellees that the train was quite long, consisting of some sixty cars, and was propelled by two engines. When the train arrived at the station of Vulcan, which is variously estimated by the witnesses to be from four to eight miles distant from Gad's Hill, the train was cut in two parts and placed upon sidetracks, so as to permit other trains to pass upon the main track. During the time the train remained at Vulcan a number of passenger trains passed, going at the rate of forty miles per hour; and some switching was also done at this place. For the purpose of ventilation, the sliding door on the east side of this car was left

partly open, and trains passed it at this station on both sides of the car.

The train then proceeded toward Gad's Hill with one engine in front and the other in the rear. It appears that the grade of the railroad track at Gad's Hill was very steep, and when the train arrived there an attempt was made to go up the grade with the entire train, and to effect this the engine used a great amount of steam; but sufficient power could not be secured to make the grade. Twelve of the cars were then cut loose from the train, and by the front engine were taken up the grade, leaving the other cars standing, amongst which was the car containing the property of appellees. It was about this time that this car was discovered to be on fire.

It appears that the agent, Ed. Denton, had left this car at Vulcan, and gone to the caboose in the rear of the train, in order to warm himself, leaving Rose in the car, who went to sleep. The testimony on the part of appellees tended further to prove that when the train "stalled" at Gad's Hill Rose was awakened by the stock and the fire. At that time the fire had enveloped the hay and was sending up great flames from the interior of the car, so that Rose, with singed eyebrows and hair, was only able to escape through the door in his stockinged feet. No other car appears to have caught on fire.

The testimony on the part of appellees tended also to prove that neither Denton nor Rose smoked, and that they had lighted the lantern the last time before the fire some time prior to reaching Vulcan, and that it had been extinguished before reaching that station; that the lantern was securely fastened with nails turned back into the wood, so that it could not fall, and that each time the lantern was lighted the match was thrown outside, and that the fire was not caused by the lantern or by any act done by them. And we are of the opinion that, from the circumstances adduced in evidence, the manner in which the sliding door was left open with the inflammable hay in between the doors, from the switching that was done at Vulcan, which, according to the testimony adduced by appellees, was from twenty to thirty minutes prior to the discovery of the fire, from the great amount of steam that was used, and the consequent expulsion of sparks from the locomotives at Gad's Hill just before the fire was discovered, and from the

testimony of Denton and Rose that the fire was not caused by the lantern or any act on their part, the jury could have found that the fire was caused by sparks emitted from one of appellant's engines. *Railway Company* v. *Dodd,* 59 Ark. 317; *St. Louis, I. M. & S. Ry. Co.* v. *Coombs,* 76 Ark. 132; *St. Louis, I. M. & S. Ry. Co.* v. *Dawson,* 77 Ark. 434; *St. Louis S. W. Ry. Co.* v. *Trotter,* 89 Ark. 273.

On the other hand, the testimony on the part of the appellants tended to prove that the lantern was seen in the hands of Denton at various times from St. Louis to Bismark, which is about 42 miles distant from Gad's Hill, and that when in the car it was hung upon a pole running across the car. From these facts, and the circumstances attending the fire, we think there was evidence which would have justified the jury in finding that the fire was caused by the lantern, which was in the sole use and control of appellees' agent.

At the request of the appellees, the court gave the following instructions, amongst others:

"1.   In this case the defendant is liable to the plaintiffs, respectively, for the damages sustained by them, if any, by reason of the destruction of such goods and property as you may find plaintiffs shipped from McLeansboro, Illinois, in February, 1910, for which they have sued, unless you find that the defendant has proved by a preponderance of the evidence that said goods and property were lost or destroyed by reason of the alleged neglect of the plaintiffs, or Ed. Denton or W. H. Rose, as claimed in the defendant's answer."

"4.   The defendants have affirmatively pleaded in this cause that the fire was caused by the negligence of the agent or employee of the plaintiffs (or Rose).   You are told that the burden of the proof is upon the defendants to show that defense; and unless you find from a preponderance of the evidence that said defense has been sustained, then you cannot find that said fire was caused by said plaintiffs or their agent (or the said Rose)."

The appellants requested the court to give, amongst other instructions, the following, which was refused:

"6.   You are instructed that the defendant companies, as common carriers of plaintiffs' property alleged to have been destroyed, are not liable in damages for the destruction of said

property by fire while in their possession, if said fire was caused or originated by reason of the acts or fault of the agent of the shipper accompanying said shipment, or by the act of said Rose, if you find that the said Rose was riding in said car with the knowledge, acquiescence or consent of Denton, the agent of the shipper, and without the knowledge, acquiescence or consent of the defendant railway companies. If, therefore, you believe that the destruction of said car was due to any act of the said Rose or the said Denton, or if you find that the destruction of said car by fire may be as reasonably attributable to the acts of said Rose or the said Denton as to the sparks emitted from the locomotives of the defendants, then it will be your duty to return a verdict for the defendant."

The jury returned a verdict in favor of appellees, and this appeal is taken by the appellants from the judgments rendered thereon.

1. In the bill of lading or contract of shipment there was a provision limiting the liability of the carrier for the loss of the property while in transit to an amount therein stipulated. The lower court ruled that this provision of the contract was not binding, and that appellees were entitled to recover, if at all, the market value of the property destroyed; and thereupon permitted the introduction of testimony relative to the market value of each item of the property destroyed. This ruling of the court, we think, was correct. This was an interstate shipment, and this court has held that under the Interstate Commerce Act (Act of February 14, 1887, U. S. Comp. Stat. 1901, p. 3169), with the amendments thereto, commonly known as the Hepburn Act (Act of June 29, 1906, U. S. Comp. Stat. Supp. 1907, p. 909; Supp. 1909, p. 1166) any contract limiting the liability of a carrier of property transported in interstate commerce in case of loss to certain specified maximum amounts was void. *Southern Express Co.* v. *Meyer,* 94 Ark. 103; *St. Louis, I. M. & S. Ry. Co.* v. *Dunn,* 94 Ark. 407; *Kansas City So. Ry. Co.* v. *Carl,* 91 Ark. 97; *St. Louis S. W. Ry. Co.* v. *Grayson,* 89 Ark. 154.

2. It is urged by counsel for appellants that the court erred in refusing to permit certain testimony as to statements made by Ross and Denton just after the fire to be considered for the purpose of showing the origin thereof. After Rose

escaped from the burning car, he went to the caboose at the rear of the train, a distance of probably 48 car lengths or 1,600 feet, and there told Denton of the fire. Denton then left the caboose, and one of the brakemen testified that he thereupon asked Rose to sit down in the caboose, and inquired of him how the car got on fire, and that Rose replied, "Don't know how it got on fire, without it got on fire from the lantern." The brakeman further testified that Denton in the meanwhile had gone to the burning car, and in a short time returned to the caboose, and thereupon Denton and Rose talked about the lantern. Denton asked Rose how the fire occurred in the car, and Rose replied: "I don't know how, unless it was from that lantern." And Denton said, "I turned the lantern out when I left;" and Rose said, "No, you didn't turn it out; you turned it down low, but you didn't turn it out." And Denton said, "Yes, I did." And they disputed as to this. Upon their examination as witnesses, Rose and Denton had been asked whether these conversations had occurred, and whether they had made these statements, and both denied that such conversations had occurred or that they had made any such statements. The court ruled that the brakeman could testify as to the conversations and statements, and that they could be considered for the purpose of contradicting these witnesses, but not for the purpose of showing the origin of the fire. Counsel for appellants urge that these conversations and statements were part of the *res gestae*, and were therefore competent as evidence of the origin of the fire.

In the case of *Little Rock Traction & Electric Co.* v. *Nelson*, 66 Ark. 494, it is said that this court has repeatedly quoted with approval the following definition and explanation of *res gestae* from Wharton on Evidence: "The *res gestae* may be therefore defined as those circumstances which are the automatic and undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist, as we will see, of sayings and doings of any one absorbed in the event, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they must be the automatic and necessary

incidents of the litigated act;   necessary in this sense, that they are part of the immediate preparations for, or emanations of, such act, and are not produced by the calculated policy of the actors.   They are the act talking for itself, not what people say when talking about the act."

It has also been said that, in order to constitute a part of the *res gestae*, the statements must have been made under circumstances that show that they are immediate emanations of the occurrence, and not of a mind endeavoring to excuse the happening, or with the intent to manufacture evidence for one's benefit.   *Kansas City So. Ry. Co.* v. *Morris*, 80 Ark. 528.

In the case of *Fort Smith Oil Co.* v. *Slover*, 58 Ark. 168, it was held that the statements of the deceased as to how he had been hurt, made about thirty minutes after the injury and after he had been carried home, were not a part of the *res gestae*.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Kelly*, 61 Ark. 52, it was held that the statement made by a railroad brakeman a few minutes after a child was struck and injured by a train, after the acts to which it referred were completely passed, in response to questions as to how the injury occurred, was a narration of past events and not part of the *res gestae*.

In the case of *Little Rock Traction & Electric Co.* v. *Nelson. supra*, a statement made by the motorman in charge of a street car a few minutes after an injury was complete, as to what he had done, was held inadmissible as part of the *res gestae*. See also *Rogers* v. *State*, 88 Ark. 451.

While there are no limitations of time within which the *res gestae* can be arbitrarily defined, yet to constitute them *res gestae* the matters and declarations offered in evidence must be so closely connected with the actual occurrence as to be without the suspicion of afterthought.   They must be "the event speaking through the instinctive words and acts of the participants, and not words and acts of the participants narrative of the events."

In this case it appears that the conversation had with the brakeman by Rose was in the nature of an opinion, rather than a statement of fact relative to the occurrence.   It was made as a narration of a past event, as to which the participants, Denton and Rose, differed.   The first statement was

made after Rose had traveled the distance of 48 car lengths, and after he had informed Denton of the fire, and after Denton had left the caboose. Under these circumstances, we do not think from the time and manner in which this statement was made that it was so proximate as to grow out of the occurrence, and so closely connected with it as to constitute one transaction. The statements made in the conversation claimed to have taken place between Denton and Rose were still longer after the fire, and were seemingly made with the intent of exculpating each of the speakers, rather than as words springing from the occurrence itself. We do not think that any of these statements was part of the *res gestae*.

3. It is urged by counsel for appellants that the court erred in its rulings upon the above-quoted instructions, and by them in effect holding that the burden of proof was upon the carrier to show that the loss occurred by reason of the act of the shipper or his agent, even though the shipper or his agent accompanied the goods.

It is familiar doctrine that the law imposes upon a common carrier an unusual and extraordinary duty and liability for the safety of the goods entrusted to it for the purpose of transportation. The bill of lading which it issues is not only an acknowledgment of the receipt of the goods for carriage, but it is also a contract to carry safely and deliver. It is, however. the duty of the common carrier, irrespective of any contract, subject only to reasonable regulations, to accept and safely carry and deliver the goods which are intrusted to it for transportation. Its obligation and liability does not rest alone upon contract, but upon its duty as a common carrier fixed and settled by custom and common law. By the common law, the carrier is made practically an insurer of the goods against all losses of every kind, with certain exceptions. These exceptions relate to losses which arise from certain specified acts, and these acts are the act of God, of the public enemy, of public authority, of the shipper, or from the inherent nature of the goods. In all cases in which the loss occurs except in cases where it arises from one of the above-specified acts, the carrier is responsible, although there may be no negligence or fault upon its part. Its liability springs from the duty imposed upon it to carry safely, and the law making it responsible as an

insurer for the losses occurring from any and every cause
other than one of the above specified excepted acts.   1 Hutch-
inson on Carriers, § 265;  *Pollard* v. *Vinton*, 105 U. S. 4;
*Little Rock & M. R. T. Ry. Co.* v. *Talbot*, 47 Ark. 97;  *Merritt*
v. *Earle*, 31 Barb. 38;  *Mitchell* v. *Carolina Cent. R. Co.* (N.
C.), 44 L. R. A. 515.

It has also been held that a common carrier may, by
reasonable contract, limit the liability which is thus imposed
upon it by the common law.   But those contractual limita-
tions have been virtually abrogated by national and State
legislation.   Inasmuch as the law makes the obligation of the
carrier in the nature of an insurer of the safety of the goods
entrusted to it for carriage, it is settled that whenever the
carrier claims that the loss arose from one of the above speci-
fied acts, exempting it from liability, the burden of proof of
that fact rests upon the carrier.   2 Hutchinson on Carriers,
§ 287; 3 *Id.* § 1353; *Mitchell* v. *Carolina Cent. Rd. Co.*,
*supra;*  *Bonfiglio* v. *Lake Shore, etc., R. Co.*, 126 Mich. 476;
*Park* v. *Preston*, 108 N. Y. 434;  *Wallingford* v. *Railway Co.*,
26 S. C. 258;  *Davis* v. *Wabash, St. L. & P. T. Co.*, 89 Mo. 340;
*Schaeffer* v. *Phila. & Reading R. Co.*, 168 Pa. St. 209;  *Kalina*
v. *Union Pac. R. Co.*, 69 Kan. 73.

In a suit brought by a shipper for loss of his goods, therefore,
it is ordinarily sufficient to show a delivery of the goods to
the carrier for transportation and a subsequent loss thereof
during transit.   The *onus probandi* is then upon the carrier
to bring the case within one or the other of the said exemptions.
If the carrier claims that the loss arose from the act of the ship-
per, with or without negligence, the burden of proof rests upon
the carrier to show that fact.   If it proves that the loss oc-
curred from an act of the shipper, whether negligent or other-
wise, then the carrier is relieved from liability, unless it is
shown by the shipper that, notwithstanding his own act caused
the loss, the damage was due to some subsequent negligence of
the carrier in avoiding or minimizing the damage.   In that
event the burden rests upon the shipper to show such negligence
upon the part of the carrier.

In the case of *Cau* v. *T. & P. R. Co.*, 194 U. S. 427, it
is said: "After the damage to the goods had been established,
the burden lay upon the carrier to show that it was caused

by one of the perils from which the bill of lading exempted the carrier. But it was also held that, even if the damage so occurred, yet if it might have been avoided by skill and diligence at the time, the carrier was liable. But, in this stage and posture of the case, the burden is upon the plaintiff to establish negligence, as the affirmative lies upon him." *Propeller Niagara* v. *Cordes*, 21 How. 7; *Arthur* v. *T. & P. R. Co.*, 204 U. S. 505; *St. Louis, I. M. & S. Ry. Co.* v. *Lesser*, 46 Ark. 236; *Little Rock, M. R. & T. R. Co.* v. *Talbot*, 39 Ark. 523.

The fact that the shipper or his agent accompanies the goods does not alter this rule that the burden of proof rests upon the carrier to first show that the loss was due to the shipper, if it claims exemption upon that ground. It is true that the goods are then not in the exclusive possession of the carrier, but they are in its custody, although the shipper also exercises acts of supervision over them. The carrier still continues under its common-law obligation of an insurer, and it is only relieved from liability when it shows that the loss occurred from an act exempting it from liability under the common law, or a special valid contract.

It is argued that the shipper who accompanies the goods has facilities equal to those of the carrier for knowing and explaining the cause of the loss occurring during transit, and that the burden is for this reason cast upon him to show the cause thereof. This contention can only be predicated upon the theory that the carrier is only liable for its negligence, and that the burden of showing that it was free from negligence is cast upon it because, while the goods are in its exclusive custody, it has facilities of showing that the loss did not occur from its negligence. But the carrier is liable, not because of its negligence, but because of specific law which makes it the insurer of the goods while in transit, whether the cause of the loss arose from its negligence or not. Its liability not being dependent upon its negligence, nor its exemption from liability upon its freedom from negligence, the fact that it has or has not better facilities for showing that the loss occurred without negligence on its part cannot affect its liability. Its liability as an insurer of the property is not altered or lessened because the shipper accompanies the goods, and therefore because the carrier has not the exclusive possession thereof. In order

to be relieved from liability, the carrier must by proof bring itself within the exception which exempts it from the liability which is imposed upon it by positive law, and the burden cannot be shifted to the shipper to show that it does not come within that exception.

We do not think that this holding is in conflict with any principle announced in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Weakly,* 50 Ark. 397. In that case there was a special contract which at that time was valid, relieving the carrier from all liability for loss occurring to stock from any cause other than its own negligence. By that special contract, the carrier limited its liability as an insurer, and made itself liable only in event of its own negligence. It was held in that case that the presumption of negligence against the carrier from loss occurring while the stock was in transit ordinarily arose from the fact that it was in the exclusive possession of all the means of explaining the cause of the loss. But the court goes on to say in that case: "In this case there was a restriction upon the common-law liability of the carrier." It was therefore held that by reason of said special contract limiting its liability as an insurer the carrier was only liable in event of proof of its negligence, and that, under such valid contract, when the owner accompanied the property he had equal means with the carrier of explaining the cause of the loss, and the burden was under such circumstances upon the shipper to show that negligence on the part of the carrier.

That the decision in the Weakly case is based upon the special contract limiting the liability of the carrier as an insurer which was entered into in that case will be seen from the case of *St. Louis & S. F. R. Co.* v. *Wells,* 81 Ark. 469. In the latter case complaint was made of the following instruction given at the instance of the shipper: "If the jury find that the defendant received the jack for shipment, and the same was killed while in the defendant's car, the presumption is that such killing resulted from the negligence of the defendant, or its servants, in the operation of its locomotives or cars." Reliance was placed upon the Weakly case to show that this instruction was erroneous. After showing that the contract therein pleaded was not legally entered into, and that the decision in the Weakly case was predicated upon a contract

of similar import which had been legally entered into, the court said: "But, with the special contract out of consideration, the carrier was liable as an insurer of the safe transportation and delivery of the freight—it was responsible for all losses except those occasioned by the act of God or the public enemy; and when it appeared that the animal was killed while in transit, it devolved upon the carrier, in order to exonerate itself from liability, to show that the loss resulted from one of those causes."

We have been referred by counsel for appellant to several cases upon this question, but in none of them is it held that the carrier is relieved of the burden of showing that the loss of the goods while in its custody in transit arose from the act of the shipper or his agent when that exemption was relied upon, even where the shipper or his agent accompanied the goods. In those cases to which we have been referred, it was only held either that the court erred in refusing to instruct the jury that "if the fire which destroyed the property was caused by a lighted lantern in the sole use and control of plaintiff's servant who was in the car in charge of the property, plaintiff could not recover," as in the case of *Hart* v. *C. & N. W. R. Co.*, 69 Ia. 485; or that the undisputed evidence showed that the loss occurred through the act of the shipper or his agent accompanying the goods, as in the case of *Nunnerlee* v. *St. Louis, I. M. & S. Ry. Co.* (Mo. App.), 129 S. W. 762.

Our conclusion is that by the common law a common carrier is in effect an insurer of goods entrusted to it for carriage while the same are in transit, except when the loss occurs by reason of one or the other of the acts above specified, and that the burden of proving that the loss arose from any of those excepted acts rests upon the carrier, even though the shipper accompanies the goods, and that it is only in cases where the shipper claims that the carrier was negligent in not avoiding or lessening the damage after it had arisen from an act of the shipper that the burden of proof rests upon the shipper to prove such negligence.

Upon the trial of this case both parties, it appears, proceeded upon the theory that, if the loss was caused by the act of the agent of appellees or of Rose in the use of the lantern, that is to say, if the fire originated from the lantern, then such act was indisputably one of negligence. The appellants, as well as

appellees, requested instructions based upon that theory, and did not specifically or in effect otherwise object to the use of the word "negligent" in appellees' instructions, as applied to the act of Denton or Rose. They thereby waived any objection thereto on that ground. *Choctaw, O. & G. R. Co. v. Hickey*, 81 Ark. 579; *St. Louis & S. F. R. Co.* v. *Vaughan*, 88 Ark. 138; *Little Rock & M. Ry. Co.* v. *Russell*, 88 Ark. 172; *Ark. Midland Ry. Co.* v. *Rambo*, 90 Ark. 108. In the light of the manner in which the case was tried, both parties and the jury understood that these instructions in effect stated that the burden of proof rested upon the appellants to show that the loss occurred from an act of the shipper or his agent, whether such act was negligent or not, and that, if the loss did arise from the act of the shipper or his agent, Denton, or of Rose, whether negligent or not negligent, then appellants were not liable for the loss. We are therefore of the opinion that the court did not err in its rulings upon the instructions.

We have examined the other assignments of error made by appellants, and we do not think that any of them is well founded. Finding no prejudicial error in the trial of the case, the judgment is affirmed.