St. Louis, Iron Mountain & Southern Railway Company
*v*. Hudgins Produce Company.

Opinion delivered May 10, 1915.

1. Carriers—connecting lines—damage to freight—liability.—In an action for damages to freight, when the same has been shipped over two or more lines, the law presumes, in the absence of other proof, that the delivering carrier was the negligent one.

2. Carriers—freight—insurers.—A common carrier is practically an insurer of all goods received by it for shipment, against all losses except those relating to, or which arise from the act of God, of the public enemy, of constituted authority, of the shipper, or from the inherent nature of the goods shipped, and in all cases in which loss occurs, not falling within the recognized exceptions, the carrier is responsible notwithstanding there may be no negligence or fault upon its part.

3. Carriers—damage to freight—vis major—concurring negligence. —Where the negligence of a common carrier concurs with an act of God in causing damage to freight, the carrier is still required to answer therefor.

4. Carriers—unexplained damage to freight—presumption.—In an action for damages done to freight, the presumption is, where the carrier offers no explanation of the damage, that the same resulted from its negligence.

Appeal from Miller Circuit Court; *George R. Haynie,*
Judge; affirmed.

STATEMENT BY THE COURT.

Appellee brought this suit in the justice court for $50.75 damages to a carload of Irish potatoes, shipped from Chicago to it at Texarkana. Judgment was rendered by default in the justice court, and the case was appealed to the circuit court.

The president of appellee company testified that the Irish potatoes were bought through Earle Brothers of Chicago, and shipped with bill of lading attached to draft allowing inspection. That when the car reached his place at Texarkana, the entire first row of sacks of potatoes on the floor of the car was frozen, and "there was no straw in there to protect them. I have been in the produce business for about eight years, and had experience in receiving and shipping potatoes; the majority are shipped

without anything on the floor at all when the car is in good shape. I have received them with a stove in the car and with paper spread on the bottom of the car. I have received potatoes through the winter of each year, from one to five cars each week; have received them with stoves in the cars to protect them against freezing, and have had the cars held up and run in the roundhouse. This car had no protection—no straw or anything to protect the potatoes. I inspected the car and found it in bad shape."

The testimony showed that the potatoes damaged and destroyed were of the value of the amount claimed.

Witness further stated that he had no knowledge of how the cars were loaded, and did not know whether they were frozen when loaded in the car or not; that the bill of lading was an ordinary one, with no notation on it except at the bottom, "Allow Inspection." There was no notation of bad order or bad condition of any kind.

The court instructed the jury that the burden was on the plaintiff to show by a preponderance of the testimony that the potatoes were frozen or damaged by the negligence of the railroad company, that if it failed to make out a case of negligence, that it would find for the defendant; that the defendant would be liable for negligence causing damage to the potatoes whether the negligence occurred on its own or the connecting line from which it received the shipment.

The jury returned a verdict against the railway company and from the judgment it prosecutes this appeal.

*E. B. Kinsworthy, Troy Pace* and *T. D. Crawford,* for appellant.

1. There was no proof of negligence nor unnecessary delay. The company is not liable for unavoidable accident or *vis Major.* 1 Moore on Car. p. 314; 4 Elliott on Railroads, § 455; 30 Neb. 197; 102 Mass. 283; 32 N. Y. Supp. 1; 106 S. W. 1188; 111 Minn. 167; 92 Ark. 573; 63 Mo. 230; 103 Am. St. 507; 102 N. E. 34. Nor for improper loading. 37 Wisc. 190; 173 Pa. St. 398; 22 Ore. 14; 132 Fed. 125; 32 S. W. 14; 129 Fed. 253.

*Webber & Webber,* for appellee.

1.    The evidence is sufficient and there is no error in the instructions. 100 Ark. 269; 82 *Id.* 143; 86 *Id.* 483; 61 *Id.* 64. In the absence of proof, the presumption is that the last carrier was the negligent one. The damage was proven and the burden was on the company to show it resulted from the act of God, or *vis Major. Supra.*

KIRBY, J., (after stating the facts). The appellant contends that there was no negligence shown for which it was responsible, causing damage to the shipment of potatoes, and that the court erred in not instructing a verdict in its favor.

(1)    It is not disputed that the potatoes were in a damaged condition when they arrived at the point of destination on appellant's line. Appellant made no effort to show where or how the damage actually occurred, and the law presumes in the absence of other proof that the delivering carrier was the negligent one. *Midland Valley Rd. Co.* v. *Hale,* 86 Ark. 484; *St. Louis, I. M. & S. Ry. Co.* v. *Coolidge,* 73 Ark. 112.

(2)    A common carrier is practically an insurer of all goods received by it for shipment against all losses except those relating to, or which arise from, the act of God, of the public enemy, of constituted authority, of the shipper, or from the inherent nature of the goods shipped, and in all cases in which loss occurs, not falling within said recognized exceptions, the carrier is responsible notwithstanding there may be no negligence or fault upon its part.

Its liability springs from the duty imposed upon it to carry safely and the law making it responsible as an insurer for the losses occurring from any and every cause, other than one falling within the specified exceptions. *St. Louis, I. M. & S. Ry. Co.* v. *Pape,* 100 Ark. 269; *Brennisen* v. *Pa. Rd. Co.,* 100 Minn. 102.

Appellant contends that the damage to the freight shipped, which was of a perishable nature and froze while in transit, was caused by act of God, for which the carrier is not liable, there being shown no unnecessary delay in

transportation or carelessness on its part in exposing the shipment to the cold.

Some of the authorities hold ''where the immediate and sole cause of loss is the action of the elements, as by freezing, the carrier is relieved from liability.  4 Ell. Railroads, § 1455; 1 Moore on Carriers, p. 314; *Schwartz* v. *Erie Rd. Co.,* 106 S. W. (Ky.) 1188.

(3)   Of course, if the negligence of the carrier concurs with the act of God in producing the injury, it is still required to answer therefor.  *Vail* v. *Pacific R. R. Co.,* 63 Mo. 230; 6 Cyc. 381; *White* v. *Minneapolis & R. R. Ry. Co.,* 111 Minn. 167.

In the last cited case the court said:  ''A carrier is not an insurer against damages to freight from changes in temperature, unless the circumstances in which the transportation is undertaken impose upon the carrier that obligation; but if, after acceptance of the freight, its transportation is delayed, the carrier must use reasonable care to protect it during the delay.''

There was no unnecessary delay in the delivery of this carload of potatoes shown from the testimony, nor any evidence tending to show negligence upon the part of appellant company, the delivering line, but the shipment arrived at destination in its possession in a damaged condition, and there is a presumption of law that the carrier is responsible therefor; that the delivering carrier is the negligent one.  It made no effort to show when, where or how the injury occurred, nor whether before or after the shipment was received from the connecting carrier on its line, and although the testimony of the appellee tends strongly to show that damage was occasioned by the failure to load the potatoes properly by putting straw in the car to prevent those lying next to the floor from freezing, or by putting paper on the floor with a stove inside to keep the temperature above freezing, it was not shown whose duty it was to attend to the proper loading thereof, and generally the loading and unloading of goods are under the carrier's control, and it is responsible for any loss or injury incident thereto.  6 Cyc. 381.

(4)   Of course, if the shipper assumed the responsibility of loading and unloading, it would relieve the carrier from liability for loss in that connection. We do not think the testimony in this case sufficient to overcome the presumption that the damage occurred on the appellant's line, and it is sufficient to support the verdict. Affirmed.