PAYNE v. ORTON.

Opinion delivered October 31, 1921.

1. APPEAL AND ERROR—HARMLESS ERROR.—In an action against a carrier for injury to goods in shipment, an instruction that the carrier was an insurer against all losses or damage "except those which arise from an act of God, of the public enemy, of public authority, of the shipper, or from the inherent nature of the goods shipped" is not prejudicial to the carrier, though there was no evidence tending to show that any loss or damage was due to the act of a public enemy or of public authority.

2. CARRIERS—BURDEN OF PROVING EXEMPTIONS.—The burden of proving exemptions of a carrier from liability as an insurer of freight rests upon the carrier claiming the same.

3. CARRIERS—RECITAL OF BILL OF LADING.— A recital in a bill of lading that certain cotton was received in apparent good order is *prima facie* evidence of that fact.

4. CARRIERS—DAMAGE TO FREIGHT—LIABILITY.—An instruction to the effect that if the cotton alleged to have been injured in transit was in bad condition when received by the carrier, and if that bad condition was the cause of the damaged condition when the cotton arrived at destination, the jury should find for defendant, was properly modified by inserting the word "sole" before "cause", as the carrier is liable where the damage results from negligence of the carrier concurring with the act of God or some other cause.

5. CARRIERS—NEGLIGENCE—ISSUES.—It was not error to refuse to permit a carrier, when sued for negligence in the transportation of cotton, to prove that unusual conditions existed which made it impossible to ship the cotton expeditiously where no such issue was raised by the pleadings.

Appeal from Little River Circuit Court; *James S. Steel,* Judge; affirmed.

*June R. Morrell* and *James B. McDonough,* for appellant.

1. The verdict was not sustained by sufficient evidence. That rain of ten hours' duration on each of four days during which the cotton stood, ends of bales up, on the platform of the carrier, was not sufficient to rot it within twelve days, is a matter of which the courts should take judicial knowledge. 125 S. W. (Ark.) 428; 185 S. W. 768; 17 Am. & Eng. Enc. of L. 909-911; 16 Cyc. 854 *et seq.*; 3 Ark. 66.

That cotton ginned damp and baled damp will heat and become damaged is a physical fact of which the courts will take judicial knowledge. 35 Ark. 169; 37 *Id.* 219; 60 *Id.* 409.

2. Instruction 2 erred in leaving to the jury to determine the meaning of public authority.

3. The evidence does not warrant the placing of the burden of proof as to damage from the inherent nature of the cotton upon the defendant, and an instruction on the burden of proof having that effect was erroneous. Fed. Cas. No. 2691, 3 Cliff. 184; 1 Michie on Carriers, § 1003 and cases cited.

4. A bill of lading which recited that a shipment of cotton was received in apparent good order does not warrant an instruction fixing definite liability upon the carrier as having received the cotton in good order. 1 Michie on Carriers, § 1058 and cases cited.

5. The court erred in modifying instruction 4 requested by the defendant so as to make it read "sole" cause, etc., and in refusing to give instruction 5 requested. The jury ought to have been told that plaintiff could not recover damage resulting from the wet, rotted or damaged condition in which it was received. 1 Michie on Carriers, § 1003.

*Johnson & Shaver,* for appellee.

1. In this case the evidence will be given its strongest probative force in favor of the plaintiff, the appellee, and in testing its legal sufficiency that view of the evidence will be taken which is most favorable to the plaintiff. 123 Ark. 619; 192 S. W. (Ark.) 182; 110 Ark. 182; 113 *Id.* 471; 194 S. W. (Ark.) 497; 129 Ark. 280; 131 *Id.* 593.

2. Instruction 2 is a correct declaration of law approved by this court. 117 Ark. 455; 100 *Id.* 269; 99 *Id.* 363; 118 *Id.* 398, 400.

3. A common carrier is an insurer of goods received by it for immediate shipment, and the burden of proof is upon it to show that loss or damage thereto was not caused by its negligence. 26 Ark. 3; 34 *Id.* 383; 35 *Id.* 402; 39 *Id.* 148; 50 *Id.* 397; 100 *Id.* 37; 47 *Id.* 97; 69 *Id.* 150; 85 *Id.* 562. Its liability as an insurer begins when it receives the goods for immediate shipment. 60 Ark. 333; 79 *Id.* 353; 89 *Id.* 178; 60 *Id.* 465; 46 *Id.* 222; 77 *Id.* 482; 111 *Id.* 550.

McCULLOCH, C. J. The plaintiff, H. H. Orton, shipped 75 bales of cotton from Ashdown to Texarkana over the line of the Kansas City Southern Railway Company, then operated under government control. The cotton was delivered to the agent at Ashdown by plaintiff in separate lots on January 3 and January 5, 1920, and bills of lading were issued to plaintiff by the agent on those days. The first lot of cotton reached Texarkana and was delivered to the consignee on January 8, 1920, in undamaged condition, but the remainder of the cotton did not reach Texarkana until January 17 and 19, respectively, and, according to the evidence adduced in the case, it was, when delivered to the consignee, in damaged condition.

It is alleged in the complaint, and the testimony tends to show, that the cotton was in good condition when delivered to the carrier, and that the condition was so noted on the bills of lading, but that when it reached destination it was wet, partly rotted and had

to be "reconditioned," according to the terms used by the witnesses, which means that the damaged portion had to be picked off and the cotton re-baled. According to the evidence of plaintiff, there was a total loss of 4247 pounds, of the market value of 26 1-2 cents per pound, making a total damage of $1125.45.

The answer of defendant contains a denial of all the allegations of the complaint with respect to negligence on the part of those operating the railroad, and also with respect to the damaged condition of the cotton, and alleges that the damage was due entirely to the condition the cotton was in at the time it was delivered to the carrier.

The trial resulted in a verdict in favor of plaintiff for the sum above named, as shown by plaintiff's testimony. It is earnestly contended that the evidence is insufficient to sustain the verdict.

There is a conflict in the evidence, but it is sufficient to sustain the verdict either way as to the extent of the damage to the cotton and the cause of the damage, whether resulting entirely from the condition it was in when delivered to the carrier or from the delay in transportation. The plaintiff himself and other witnesses testified that the cotton was not wet nor in bad condition otherwise when delivered to the carrier, but that when received at Texarkana it was wet at the ends and rotten, and that a considerable quantity, aggregating 4247 pounds, had to be picked off and the remainder re-baled. There was also testimony showing that the cotton was shipped in open cars and was exposed to rain and snow which fell in unusual quantities and continuously during the period of delay in transportation. On the other hand, witnesses introduced by defendant testified that the cotton was very wet and in damaged condition when it was delivered to the carrier. There being a conflict in the testimony on all of the issues, we are not at liberty to disturb the findings of the jury.

The court gave instructions requested by plaintiff, and also gave a number of instructions requested by defendant, but refused to give three of the instructions requested by defendant, one of which was a peremptory instruction. The court also modified some of the instructions requested by defendant. Assignments of error are made in regard to each of the rulings of the court in giving, refusing or modifying instructions. The second instruction requested by plaintiff reads as follows:

"You are instructed that the defendant is in effect an insurer of all goods received for immediate shipment against all losses, or damage, except those which arise from an act of God, of the public enemy, of public authority, of the shipper, or from the inherent nature of the goods shipped, and the burden of proving that the loss or damage arose from any of these excepted acts rests upon the defendant, and said defendant is still liable for any loss or damage arising from any of said excepted acts if the loss or damage would not have occurred if there had been no negligence on the part of the defendant or his employees."

The criticism now made of this instruction is that it should have defined the term "public authority" or omitted the term from the instruction, and that likewise the reference to "the public enemy" should have been omitted for the reason that there was no evidence tending to show that the damage resulted from that cause. It is not possible that prejudice resulted to defendant from the inclusion of these terms in the instruction or in the failure of the court to give a definition of what constituted "public authority." It is true that there is no evidence at all that the damage resulted either by the act of the public enemy or any public or governmental authority, but, inasmuch as these conditions would only have operated as an exoneration of defendant from liability, there was no error in referring to them in the instruction, even though there was no evidence to justify it. These conditions were stated as

exemptions or exonerations from liability, and, if the terms had any controlling influence with the jury, they could only have been for the benefit of the defendant in submitting to the jury a defense about which there was no testimony.

Again, it is urged that this instruction is erroneous in placing on defendant the burden of proof as to the exemptions from liability. It is a correct statement of law to say that the burden of proving exemptions from liability as an insurer rests upon the carrier claiming such exemptions. *St. L. I. M. & S. Ry. Co.* v. *Pape,* 100 Ark. 269; *J. L. C. & E. R. R. Co.* v. *Dunavant,* 117 Ark. 455. But the contention is that the instruction placed the burden on defendant to prove that the cotton was in undamaged condition at the time it was delivered to the carrier. Such is not, however, the effect of the instruction, for it deals with the question of loss or damage occurring while the cotton was in the possession of the carrier for transportation, and correctly states the law to be that the burden is upon the carrier to prove that such damage resulted from some of the causes mentioned which exempted it from liability.

Instruction No. 3, given at the request of plaintiff, told the jury that the notation on the bill of lading showing that the cotton was received in apparent good order made out a *prima facie* case, and this was correct.

The court gave instruction No. 4, requested by defendant, after modifying it by inserting the italicized word *"sole,"* and the same reads as follows:

"If the cotton in question at the time of its delivery to the carrier was damp or otherwise in bad condition, and if that bad or wet condition, if it existed at the time, was due to excessive rains or moisture, or other causes, or to exposure before same was delivered to the carrier, and if that bad condition of the cotton, if it existed, was the *sole* cause of the damaged condition of the cotton when it arrived at Texarkana, if it was then in a bad condition, then the jury must find for the defendant."

A similar modification was made in another instruction requested by defendant on the same subject. It is contended that the modification was erroneous, but we are of the opinion that it brought the instruction into line with decisions of this court in regard to the liability of a carrier in case of concurring causes of damage; that is to say, where the damage results from negligence of the carrier concurring with the act of God or some other cause, it makes the carrier liable. *C. R. I. & P. Ry. Co.* v. *Miles,* 92 Ark. 573; *St. L. I. M. & S. Ry. Co.* v. *Hudgins Produce Co.,* 118 Ark. 398.

Finally, it is urged that the court erred in refusing to give instruction No. 5, which reads as follows:

"If the cotton was in a damp, wet or bad condition, as suggested in the last instruction, at the time of its delivery to the carrier, and if that bad or damp or wet condition, if it existed, in part caused the damage to the cotton, and if the carrier failed to transport said cotton to Texarkana within a reasonable time, and if such failure also in part caused damage to said cotton, and if the carrier at the time of receiving the cotton did not have knowledge of the wet or damaged condition of the cotton, if it existed, then it will be the duty of the jury to ascertain the amount of damage, if any, due to the wet or damaged condition of the cotton at the time of its delivery to the carrier, and also the amount of damages, if any, due to the failure of the carrier properly to transport and deliver the cotton. If the jury find that the total damage is, therefore, due in part to the nature and condition of the cotton, and if the same was wet or damaged at the time of its delivery, and if that wet or damaged condition was unknown to the carrier, and if, in addition to that damage, if such existed, the carrier by failure to transport also caused damage, the jury will ascertain the amount of damage due to each cause, and in that event will find for the plaintiff only the damage done to the cotton arising from the fault of the carrier, if said fault existed."

This instruction, it is argued here, has the effect of expressing the view that the carrier was not liable for damage resulting prior to its acceptance of the cotton for shipment. Such, however, is not the necessary meaning of the instruction, and the court was correct in refusing to give it. The instruction was in line with No. 4, requested by defendant, and they were both erroneous as requested. The court corrected the error in No. 4 by a modification, but did not attempt to correct No. 5. It was manifestly too long and involved in its statement to be corrected merely by the insertion of a word, as was done in No. 4. The instruction is open to the objection that it could be, and doubtless would have been, understood to mean that if the damage was caused by the negligence of the defendant concurring with the condition the cotton was in at that time, there would be no liability on the part of the carrier. As we have already seen from the authorities cited, such is not the law. If the defendant had asked an instruction telling the jury that the carrier was not liable for damage to the cotton occurring before delivery to the carrier, but was only liable for damage which resulted after delivery, such instruction should have been given, but that is not the effect of instruction No. 5; at least it was susceptible to another interpretation, and the court properly refused to give it.

It is also contended that the court erred in refusing to permit defendant to prove that unusual conditions existed which made it impossible to procure cars for more expeditious transportation of cotton. The pleadings raised no such issue, even if it be held that a carrier can, after accepting a commodity for immediate transportation and issuing a bill of lading, excuse itself on such a plea.

There are other assignments of error which we do not deem to be of sufficient importance to discuss.

The judgment is affirmed.