St. Louis Southwestern Railway Company, Henwood, Trustee, *v.* Fleming.

4-7460                                              183 S. W. 2d 513

Opinion delivered November 20, 1944.

922

*Gaughan, McClellan & Gaughan,* for appellant.

*Rowell, Rowell & Dickey,* for appellee.

SMITH, J.   Appellee consigned to himself at Pine Bluff, from Oskaloosa, Iowa, a car of mixed freight consisting of household goods, a bowling alley outfit, three billiard and three pool tables, and a variety of other personal property.   Somewhere in transit, many of these articles were damaged, and others demolished.   A suit for damages resulted in a judgment of $1,991.93, and from that judgment is this appeal.

It is not insisted that the judgment is excessive, the insistence for the reversal of the judgment is that the damages resulted from the negligent manner in which the goods were packed in the car.

There is but little controversy as to the law of the case, which has been settled by numerous decisions of this and other courts, and is thus summarized in the case of *St. L. I. M. & S. Ry. Co.* v. *Hudgins Pro. Co.,* 118 Ark. 398, 177 S. W. 400: "A common carrier is practically an insurer of all goods received by it for shipment against all losses except those relating to, or which arise from, the act of God, of the public enemy, of constituted authority, of the shipper, or from the inherent nature of the goods shipped, and in all cases in which loss occurs, not falling within said recognized exceptions, the carrier is responsible notwithstanding there may be no negligence or fault upon its part."

This cause was submitted to the court, sitting as a jury, and the court was requested to find the fact to be that, "The plaintiff shipper failed to exercise reasonable care in loading the shipment here involved." Predicated upon this finding of fact, which the court declined to make, the court was asked to make the following declaration of the law:

1. "When the shipper assumes the duty of packing freight for shipment by rail it is encumbent upon him to so reasonably and securely pack the same that it will not be injured from the ordinary and usual incidents attendant upon shipment of such freight by rail."

2. "Where the shipper assumes the duty of loading freight for shipment the carrier is not liable for damage arising from the shipper's failure to so load the freight as to withstand the ordinary and usual incidents attendant on such shipment of freight by rail." The only other declaration of law requested was one to the effect that under the evidence the defendant railroad company was not liable.

The declarations above copied might well have been made, as they correctly declared the law as abstract propositions, but no error was committed in refusing to make these declarations of law, for the reason that the court found the fact to be that the damages did not result from the ordinary and usual incidents attendant upon shipment of such freight by rail, and did not arise from the shipper's failure to so load the freight as to withstand the ordinary and usual incidents attendant on such shipment of freight by rail, but found that the damages had resulted from the rough manner in which the car had been handled while in transit.

The testimony is conflicting as to whether the car had been loaded with proper care, and testimony was offered on behalf of the railroad company as to precautions which should have been taken, but which were omitted. On the other hand, testimony was offered to the effect that the car had been loaded with the greatest care, that the services of seven persons were employed,

including two employees of the local transfer company which hauled the goods to the car, and that five days were consumed in loading the car, resulting in demurrage charges for two days excess time over that permitted for loading a car after it had been turned over to the shipper to be loaded. The initial carrier did not load the car, but the testimony is to the effect that while it was being loaded, the carrier's representative saw from time to time the manner in which it was being loaded, and no objection was made that the goods were being improperly loaded.

The damage appeared to have been occasioned principally by the movement of the bowling alley equipment, which weighed approximately 25,000 pounds, and had shifted about 15 or 20 feet, and had been thrown a distance of 4 feet from the end of the car in which it had been placed on the floor of the car. The testimony shows that somewhere in transit there had been an impact so great that pieces of 2 x 4 used in securing said bowling alley equipment, which were nailed to the floor of the car with spikes, were broken and smashed into kindling wood; that other pieces of 2 x 4 extended from the ceiling of the car to the floor and were fastened to the floor with spike nails, and that other pieces of 2 x 4 were placed in a slanting position and were securely nailed and spiked to hold the bowling alley equipment in place.

There was testimony by persons experienced in loading such commodities that more and larger pieces of timber should have been used, and should have been better placed, but opposed to this was other testimony, to the effect that the bowling alley equipment was loaded just as it had been loaded in the car in which it was shipped by the manufacturer upon its purchase by the plaintiff, and that it had reached its destination without damage.

Appellee testified that the car furnished for this shipment was an old one, and that when it arrived at Pine Bluff, its destination, it leaned at an angle of about ten degrees from the perpendicular, that the doors were

all nailed shut with large spikes, and that it required a half a day with crow bars to open the doors and that the doors were not nailed when the car left Oskaloosa.

W. E. Bynum, employed by the appellant railroad company as a car inspector at Pine Bluff, testified that he examined the car after its arrival at Pine Bluff, and that he did not observe that the car was inclined from the perpendicular, and that he saw no evidence that the pieces of 2 x 4 had been employed to keep the bowling alley in place. But these were of course questions of fact. This witness did admit that the goods were in a damaged condition, and when asked what caused the condition in which the door was found, answered, ''a severe shock would cause it.''

The declarations given and those refused import the finding that the damages were not occasioned by the negligence of the shipper in loading the car, nor from the inherent nature of the goods shipped, but resulted from the rough handling which the car had received in transit, and for this damage the carrier was properly held liable, and the judgment must be affirmed, and it is so ordered.