LITTLE ROCK TRACTION & ELECTRIC COMPANY *v.* NELSON.

Opinion delivered June 3, 1899.

1.  EVIDENCE—OPINION OF NON-EXPERT.—In an action against a street car company to recover damages sustained by plaintiff in attempting to board a moving car, it was error to permit plaintiff, a non-expert, to testify that he would have had no difficulty in getting on the car if it had not moved forward with sudden rapidity after he started to get on it. (Page 498.)

2.  SAME.—It was error to permit a non-expert witness to testify that it was not dangerous to get on a street car by the front platform when it was running slowly.    (Page 499.)

3.  SAME—COMPETENCY.—Evidence that boys had ridden on defendant's cars at different times, with or without permission and without paying fares, is incompetent to prove that plaintiff was or was not entitled to ride on the car he attempted to board at the time he was injured. (Page 499.)

4. SAME—RES GESTAE.—In a personal damage suit against a street car company, a statement as¦ to the cause of the accident, made by the motorman in charge of the car after the injury was complete, after the plaintiff had been removed from where he had fallen and was sitting in the car, and after the motorman had taken down the names of the eye-witnesses of the accident, is inadmissible as part of the *res gestae.* (Page 499.)

5. SAME—ADMISSION—IMPRESSION OF WITNESS.—It was not error to exclude testimony of a witness to the effect that he heard plaintiff talking about the accident in which he was injured, and that the impression left on his mind by what plaintiff said was that the injury was due to plaintiff's fault. (Page 503.)

6. STREET CARS—TRESPASSERS.—The employees of a street car company are under no obligation to keep a lookout to prevent boys endeavoring to ride without permission, and without paying fare, from entering its cars while in motion. (Page 505.)

7. SAME.—An infant riding upon a street car, without paying fare, by invitation of the motorman in charge of the same, who has authority to receive and let off passengers, is not a trespasser. (Page 505.)

8. SAME—INFANT PASSENGER.—In entering, riding upon and leaving street cars, an infant is bound to exercise prudence equal to his care, knowledge and experience. (Page 505.)

Appeal from Prairie Circuit Court, Southern District.

JAMES S. THOMAS, Judge.

¦*Rose, Hemingway & Rose* and *C. T. Coleman*, for appellant.

It was error to permit plaintiff to testify as to his opinion with regard to the danger or difficulty of boarding the car. 1 Whart. Ev. 509; 29 Ark. 448; 24 *id.* 251; 56 *id.* 612; 57 *id.* 387. It was error to admit evidence of what the motorman said after the accident—it was not of the *res gestae.* 95 N. Y. 275; 19 Am. & Eng. Ry. Cas. 400; 58 Ark. 47; 1 Greenlf. Ev. § 108; 1 Wh. Ev. § 262. No proper foundation was laid for the impeachment of appellant's witness, Kelly. Sand. & H. Dig. § 2960; 37 Ark. 324. The court should have directed a verdict for defendant. The evidence shows that appellant was not negligent, and that appellee was. 58 Ark. 323; 114 N. Y. 108; S. C. 21 N. E. 102; 45 Ark. 246; 57 Ark. 461. One who boards a moving car does so at his own risk. 23 Atl. 566. Appellee's instructions are erroneous, because based on the theory that he had used all the care to protect himself reasonably to be expected of one his age. 14 S. W. 762; 21 S. W.

163. There is no duty resting on one person to anticipate or take precaution against the wrongful acts of another. 49 Ark. 262; 47 *id.* 502; 50 *id.* 483; 107 Mass. 108. One who rides without paying fare is not protected as a passenger. 59 Ark. 404; 47 N. W. 809; 13 S. W. 19; 81 Ill. 245; 85 *id.* 80; 22 Barb. 91; 8 Kas. 505; 157 Mass. 377; 110 Mo. 81; 23 S. C. 531; 67 Fed. 523; 65 N. W. 450; 66 *id.* 401; 91 N. Y. 420. It was not the motorman's duty to devote his entire attention to the protection of appellee. 17 S. E. 651. As the motorman had no knowledge of the danger of appellee on the car, he was not negligent. 23 Atl. 345; 74 Pa. St. 421; 6 Am. & Eng. Ry. Cas. 526; *ib.* 525; *ib.* 690; 26 N. E. 967.

*T. J. Oliphint* and *G. W. Murphy,* for appellee.

Appellee was not a trespasser, nor was he guilty of contributory negligence. He was a passenger, and entitled to protection as such. 55 U. S. 468; 29 Am. Rep. 619; 2 S. W. 315; 18 S. W. 1090; 3 L. R. A. 156; 11 S. W. 751; 10 S. E. 730; 8 So. 708. There was no error in the admission of appellee's and witness Martin's opinions as to the degree of danger. 27 Atl. 309; 47 N. W. 459. The statement of the motorman was admissible as part of the *res gestae.* 48 Ark. 333; 65 Ark. 261.

BATTLE, J. The Little Rock Traction & Electric Company seeks to set aside a judgment which was recovered against it by Cecil Nelson in the circuit court of the southern district of Prairie county for the sum of $2,500, which was assessed against it, by the verdict of a jury, as compensation to Nelson for personal injuries alleged to have been sustained by him in consequence of the failure of the company to exercise due care in the operation of its street railway.

The judgment was recovered in an action instituted by Cecil Nelson, by his father and next friend, J. W. Nelson, against the Little Rock Traction & Electric Company. The plaintiff, after alleging that he is only ten years old, and that the defendant is a corporation operating a street railway in the city of Little Rock, stated the circumstances and causes of the injuries as follows: On the 11th of August, 1896, at the

instance of the defendant's motorman, he took passage on the car passing from Rector avenue to the end of the car line and return. At the end of the line the car stopped for a few minutes, when he and other passengers got out, and remained until the car was ready to return. When the motorman was ready, and in the act of starting, he again invited the plaintiff to get on board, which he attempted to do by its rear entrance, but was prevented from doing so by the motorman. Plaintiff thereupon, seeing that the motorman intended that he should get on at the front entrance, ran to the front end of the car, caught hold of the upright "handle-bars" and of the first step, and attempted to enter the car while it was moving slowly, when this method of entrance seemed safe. At this time the motorman, knowing that the plaintiff was trying to get on, negligently and wrongfully turned on the full electric current, thereby causing the car to make a sudden lurch forward, and increased its speed, and causing him to lose his footing on the steps and his hold of one of the "handle-bars." Being unable, on account of the accelerated speed, to regain his footing, and discovering that he could not release his hold of the other "handle-bar" without incurring serious injury, he held on to it, calling as loudly as he could to the motorman to stop the car, which he failed to do. At last, after plaintiff had been dragged a great distance, his strength failed, his hold of the "handle-bar" yielded, he fell, and the whole of the car ran over his foot and ankle, crushing them so badly that his leg had to be amputated.

The defendant answered as follows: "It is not true that the plaintiff was, at the time of his injury, riding on the car by the invitation of its motorman; but he was a willful trespasser on the car, though he had been often warned against trespassing thereon; and his injury was due to his own willful wrong and contributory negligence, and not to any negligence on the part of the defendant. Defendant specifically denies all acts of negligence charged in the complaint."

The evidence in the case is too voluminous to set out in an opinion, and for that reason we shall state only so much of it as may be necessary to present the questions that will be decided.

32

It was shown by the evidence that the plaintiff received the injury for which he asked damages while he was attempting to board a car of the defendant. He (the plaintiff) testified that he got on the car at Rector avenue on the East Ninth street line; that Gillis, the motorman, invited him to get on; that two other boys, Grover Hammond and George McKee, went with him; that they rode on the car to the end of the Ninth street car line, where the car was stopped for a few minutes; that, when the motorman was about to move the car, he invited him and the other boys to get on; that the car was running slowly when they boarded it, George and Grover getting on the south side and he on the north; that the motorman whipped them off, and he ran to the front end of the car, and placed one foot upon the car, when it moved suddenly and rapidly forward, and he slipped, and fell; that he held on as long as he could, when he let loose his hold, and the car ran over his left foot. After he made this statement, his counsel asked this question: "What difficulty would you have had in getting on if it had remained going as it was when you started on it?" And he answered: "I guess I would have got on if it had not started fast." To the question and answer the defendant objected, but the objection was overruled, and exceptions were saved. Was the testimony admissible?

As a general rule, witnesses who are not required to testify as experts must state facts, and not conclusions. The opinions of such witnesses are admissible on conditions which are correctly stated in *Commonwealth* v. *Sturtevant*, 117 Mass. 122, 137, as follows: "First, that the subject-matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time; and, second, that the facts upon which the witness is called upon to express his opinion are such as men in general are capable of comprehending and understanding." According to this rule, opinion evidence is not admissible when the fact is susceptible of being adequately exhibited to the jury in the ordinary way. *Madden* v. *Missouri Pacific Railway Co.*, 50 Mo. App. 666, 673; *President, etc., of the Baltimore and Yorktown Turnpike Road* v. *Leonhardt*, 66 Md. 70, 77; 2 Fetter, Carriers of Passengers, § 465.

The testimony in question involved a submission to the witness of the decision of one of the questions which was within the exclusive province of the jury to determine, and that was, did the plaintiff exercise due care in boarding the defendant's car? This was a question which a jury of ordinary intelligence and experience in the affairs of life could decide upon a full presentation of all the facts and circumstances of the case, without the aid of the opinion of the witness. The testimony objected to was, therefore, incompetent. *Madden* v. *Missouri Pacific Ry. Co.*, 50 Mo. App. 666, 673; *President, etc., of the B. & Y. Turnpike Road* v. *Leonhardt*, 66 Md. 70, 77.

Branch Martin was allowed to testify, over the objections of the defendant, that he did not think it was dangerous to get on the East Ninth street cars by the front platform, when they were running slowly. This testimony was incompetent, for the same reason the opinion of plaintiff, as above stated, was not admissible.

Evidence was adduced at the trial to prove that boys had ridden on defendant's cars at different times without permission, and, at other times, by invitation, and without paying fare. This evidence was incompetent. It did not tend to prove that the plaintiff was or was not entitled to ride on the car he attempted to board at the time he was injured.

J. H. Williams testified that when Cecil Nelson fell, and was injured, he ran to his assistance, and called to Gillis, the motorman, who thereupon stopped the car, and moved it back where Cecil was, and put him on it. The witness testified further, over the objections of the defendant, as follows: "When he (Gillis) came back, and got the boy (Cecil), and put him on the car, he took my (witness's) name and two more of the boys' names, Will Tatum and Sam Armstrong. He (Gillis) says: 'It was my own carelessness that the boy got hurt, running them from one end of the car to the other, playing with them.'" When this statement was made, he says Cecil was sitting down in the car. Appellant contends that this testimony as to the statement made by the motorman is incompetent, and the appellee insists that it was a part of the *res gestae*, and was properly admitted. Was it a part of the *res gestae?*

In determining what constitutes the *res gestae*, we have re-peatedly quoted approvingly from Wharton on Evidence as follows: "The *res gestae* may be therefore defined as those circumstances which are the automatic and undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist, as we will see, of sayings and doings of any one absorbed in the event, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they must be the automatic and necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for, or emanations of, such act, and are not produced by the calculated policy of the actors. They are the act talking for itself, not what people say when talking about the act. In other words, they must stand in immediate causal relation to the act,— a relation not broken by the interposition of voluntary individual wariness, seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act.   *   *   *   Declarations which are the immediate accompaniments of an act are admissible as a part of the *res gestae*; remembering that immediateness is tested by closeness, not of time, but by causal relation, as just explained." 1 Wharton, Evid. (3 Ed.) §§ 259, 262.

In *Lund* v. *Tyngsborough*, 9 Cush. 36, which is said to be "the leading case in this country upon *res gestae* declarations in cases involving injuries to persons," the following is a part of the conclusions of law reached by the court:

1. "That a declaration, if it has its force by itself, as an abstract statement, detached from any particular fact in question, is not admissible in evidence, because it depends for its effect on the credit of the person making it, and, therefore, is hearsay."

2. "That whenever the act of the party may be given in evidence, his declarations, made at the time, are also admissi-

ble, if they were calculated to elucidate and explain the character and quality of the act, and were so connected with it as to derive credit from the act itself, and to constitute one transaction."

3. "That there must be a main or principal fact or transaction, and that such declarations only are admissible as grow out of the principal transaction, serve to illustrate its character, are contemporary with it, and derive some degree of credit from it." Gillett, Ind. & Coll. Ev. § 247.

In *Alabama Great Southern Railroad Company* v. *Hawk*, 72 Ala. 112, it is said: "What lapse of time is embraced in the word 'contemporaneous' is often a question of difficulty. Perfect coincidence of time between the declaration and the main fact is not, of course, required. It is enough that the two are substantially contemporaneous; they need not be literally so. The declarations must, however, be so proximate in point of time as to grow out of, elucidate, and explain the character and quality of the main fact, and must be so closely connected with it as virtually to constitute but one entire transaction, and to receive support and credit from the principal act sought to be thus elucidated and explained. The evidence offered must not have the ear-marks of a device, or afterthought, nor be merely a narrative of a transaction which is really and substantially past."

The rule, as stated in the cases we have cited, has been substantially adopted by this court. In *Clinton* v. *Estes*, 20 Ark. 225, it is said: "It may be difficult to determine, at all times, when declarations shall be received as a part of the *res gestae*. But when they explain and illustrate it, they are clearly admissible. Mere narratives of past events, having no necessary connection with the act done, would not tend to explain it. But the declaration may properly refer to a past event as the true reason of the present conduct."

In *Carr* v. *State*, 43 Ark. 104, in speaking of what declarations constitute a part of the *res gestae*, the court said: "Nor need any such declarations be strictly coincident as to time, if they are generated by an excited feeling which extends without break or let-down from the moment of the event they

illustrate. But they must stand in immediate causal relation to the act, and become part either of the action immediately preceding it, or of the action which it immediately precedes."

In *Fort Smith Oil Company* v. *Slover*, 58 Ark. 168, it was held that the statements of the deceased as to how he had been hurt, made about thirty minutes after the injury and after he had been carried home, in response to questions asked by his wife, were no part of the *res gestae*, the court saying: "It appears to the court that these statements of the deceased made to his wife have no causal relation to the act they are supposed to have been intended to illustrate; that they were not so connected with the principal fact, or such immediate emanations from it, or such immediate accompaniments of it, as to constitute parts of the *res gestae*."

In *St. Louis, Iron Mountain & Southern Railway Company* v. *Kelley*, 61 Ark. 52, it was held that a statement made by a railroad brakeman a few minutes after a child was struck and injured by a train, after the acts to which it referred were completely past, and the child had been borne away from the place of the accident, in response to a question as to how the injury occurred, was a narration of past events, and no part of the *res gestae*. The court said: "If, at the time of the accident, or immediately afterwards, the brakeman, * * * moved by the excitement of the occasion, had exclaimed to the engineer, 'I gave you the signal in time to have stopped, but you were looking the other way,' such an instinctive exclamation, made under the effect of the excitement caused by the accident, would have been a part of the *res gestae*, and admissible. And so a spontaneous utterance of that kind, if made to bystanders immediately after the accident, would be admissible, when it emanated from, and was called forth by, the excitement of the occasion." In this connection an author has truly said: "Where an act of personal violence, voluntary or involuntary, is committed, it is possible to conceive of cases where such act generates in the victim a height of excitement so great as to wholly subordinate his own personality for the time, and to render him the unconscious instrumentality through which the act is still forcing itself, much like the reverberation of the

blast is heard in the adjoining mountains." In that case the event is speaking through the person, and what is said is a part of the *res gestae.*

In *Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333, it was held that the statement of the deceased, Leverett, made immediately after he was injured by a railroad train, while he. was under a car and struggling to get out, in response to questions asked by his brother, was admissible. The court said: "The statement of Leverett was made immediately after he was run over, and while the wrong complained of was incomplete, he being still under the car, and was a part of the *res gestae,* and fairly goes to explain the cause of the condition in which he was at the time it was made. It was an emanation of the act in question, and so connected with the cause of his injuries as to preclude any idea that it was the product of calculated policy. Aside from any credit due Leverett for veracity, the circumstances immediately preceding and connected with his statement impress the mind with confidence in its truth."

The doctrine in the Leverett case, though questioned, is, we think, sustained by the weight of authority. Gillett, Indirect and Collateral Evidence, § 259, and cases cited.

In this case the statement of the motorman, if the testimony of Williams be true, was a relation of what had occurred. When it was made, the injury was complete, and Cecil had been removed from where he had fallen, and was sitting in the car. The motorman obviously made it for the purpose of showing that he was guilty of no intentional wrong; for he said, "he was playing with the boys." When he made it, he took the names of persons who saw the accident, doubtless, for the purpose of using them as witnesses, if necessasy, to prove how the accident occurred. He evidently thought that an effort might be made to hold his employer liable for the injury, and made the memorandum to enable it to ascertain the facts, and to prepare to meet any demand for reparation. The statement, therefore, was no part of the *res gestae,* was incompetent, and its admission was prejudicial to appellant.

Thomas W. Baird testified in behalf of the defendant as follows: "I got on the car after Cecil was hurt, when Gillis

was carrying him home. The boy was talking all the time; did not seem to suffer much; seemed to be concerned about what his mother would say of it. Such things excite me, and I could not repeat the exact words. But the impression left on my mind was that it was his own fault. I don't think he said so in so many words, but what he said left that impression on me, that it was his own fault." So much of this testimony as relates to the impression of the witness was excluded by the court on motion of the plaintiff. In excluding it, I think the court erred, but a majority of the court thinks that it was properly excluded.

Numerous instructions were given by the court to the jury. Among them the following was given at the request of the defendant: "If the injury to Cecil Nelson would not have occurred if he had exercised the care and caution that fairly and reasonably appeared proper to one of his age, understanding and intelligence, under the circumstances, the plaintiff cannot recover." After instructing the jury in this manner, it said to to them: "There are two theories in this case, and the instructions above given present the law upon the theories of, the respective parties. The instructions given on the part of the defendant are given upon the theory that Cecil Nelson did not attempt to enter the car on the invitation of Gillis, and are to be understood in that way." In the last instruction the court told the jury, in effect, that the only valid defense in the action was based on the theory that Gillis had not invited the plaintiff to ride, and to exclude from their consideration and decision the question whether, admitting the invitation to have been given, the plaintiff was guilty of such contributory negligence as would defeat his recovery. In this respect the instruction was highly prejudicial to the defendant. One of the defenses to the action was, the injury, which was the basis of this action, was due to plaintiff's own wilful wrong and contributory negligence, and not to any negligence on the part of the defendant. Evidence to support this defense was adduced, and upon it instructions were given at the instance of the defendant.

Appellant insists that other instructions, which were given to the jury, were erroneous and prejudicial to it. But it is not

necessary to mention the objections to them specifically. A statement of the law of the case will be a sufficient answer to appellant's contentions.

The employees of a street railway company are under no obligations to keep a lookout to prevent boys endeavoring to ride without permission and paying fare from entering its cars while in motion. Such a boy who does or attempts to do so is a trespasser, "and the company owes him no duty, save not to injure him wantonly." *Catlett* v. *Railway Company*, 57 Ark. 461.

A boy ten years of age riding upon a street car, without paying fare, by invitation of a motorman in charge of the same, who has authority to receive and let off passengers, is not a trespasser. The invitation of the motorman is an act within the general scope of his employment, for which he is responsible to his master. If the boy accepts it innocently, he is no trespasser, and it is the duty of the company to extend to him the diligence due to passengers of his age and discretion. *Wilton* v. *Middlesex Railroad Company*, 107 Mass. 108; *Metropolitan St. Rd. Co.* v. *Moore*, 83 Ga. 453; *Brennan* v. *Fair Haven & Westville R. Co.*, 45 Conn. 284; *Muehlhausen* v. *Railroad Co.*, 91 Mo. 332; *Buck* v. *People's Street Ry.*, etc., *Co.*, 108 Mo. 179.

In entering, riding upon and leaving street cars, a boy ten years of age, or over, is bound to exercise prudence equal to his care, knowledge and experience. To that extent he is under a legal duty to avoid danger, and is held responsible in law for acts or omissions contributing to his own injury. *Erwin* v. *St. Louis, Iron Mountain & Southern Ry. Co.*, 35 Am. & Eng. Railroad Cases, 390, and notes; 1 Fetter, Carriers of Passengers, § 183, and cases cited; Booth, Street Railway Law, § 385, and cases cited; *Ridenhour* v. *Kansas City Cable Ry. Co.*, 102 Mo. 270.

Reversed and remanded for a new trial.