RIVER, RAIL & HARBOR CONSTRUCTION COMPANY *v.* GOODWIN.

Opinion delivered November 11, 1912.

1. EVIDENCE—RES GESTAE.—In an action against a master for personal injuries alleged to have been caused by the master's negligence, proof that immediately after the injuries were received a fellow-servant came to plaintiff and in effect stated that plaintiff's injuries were due

to his (the servant's) negligence was inadmissible, as such statement was·not so connected with the transaction as to be a part of it, but was a narrative of a past occurrence.   (Page 251.)

2.   SAME—ADMISSIBILITY OF DECLARATIONS OF SERVANT.—The declarations of an employee as to who was responsible for plaintiff's injuries, or as to the manner in which they were received, were incompetent, as against the master, on the ground that his employment did not carry with it authority to make declarations or admissions at a subsequent time as to the manner in which he performed his duty.   (Page 252.)

3.   MASTER AND SERVANT—DUTY OF MASTER TO WARN SERVANT.—It is the duty of a master to warn an inexperienced servant of risks, either patent or latent, of which, by reason of inexperience, he does not realize and appreciate the danger.   (Page 253.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk*, Judge; reversed.

### STATEMENT BY THE COURT.

Appellee instituted this action against appellant to recover damages for personal injuries received by him while working for appellant.   Appellant was engaged in the work of preventing banks of rivers from caving.   It used the Gabion system.   The system is patented, and is so arranged that it changes the current of the river where it is washing.   As a part of the system, poles of wood bent in the form of a half circle and fastened together are used.   They are called hoops. The hoops are made in the following manner:   Two stobs of wood three or four feet long are driven in the ground about twelve or fourteen inches.   They are placed far enough apart to put between them one end of the poles which it is desired to bend.   Men then take hold of the other end of the pole and pull it around and place it between other stobs similarly driven in the ground so that the pole forms a half circle.   The men are required to pull instead of push the end of the pole around because it is less dangerous.   For instance, if the men were at work on the outside pushing the pole around, and it should break or slip from between the stobs, they would be more likely to be injured than if they stayed on the inside and pulled the pole around.   For this reason those engaged in making the hoops were required to work on the inside.

` On the day appellee was injured other servants of appellant were engaged in making hoops in the manner above

described.   Appellee and another servant of appellant were engaged in carrying poles from a boat tied to the river bank to a place in front of the hoops.   He was injured by one of the poles flying out of its fastening and striking him on the leg just as he was passing along there with one end of a pole on his shoulder.

Appellee details the circumstances attending his injury as follows:   "I was a farmer, and had never been engaged in any other occupation.   I am forty-five years of age.   I did not want to work for appellant because the business was new to me, and I was afraid I would get hurt.   They first engaged me to dig holes in the ground and bury logs in them for the purpose of securing the gabions thereto.   After I had worked on this for a few days, I was told to assist in carrying poles and placing them in front of the hoops which were being made by other servants of the company.   We had only carried three or four poles at the time I was injured.   The pole we were carrying at the time I was injured was five or six inches thick at the butt and about eighteen or twenty feet long.   We had carried it from the boat, and were travelling along a beaten path to place it in position at the side of and somewhat in front of the hoop that was being made.   Just as we came opposite the stobs they had driven in the ground, and started to make the turn, one of the stobs pulled out of the ground.   This released the pole which was being bent into the hoop, and the end flew around and struck me on the leg, breaking it.   I did not know it was dangerous to go in front of the hoops when they were making them.   I thought the stakes were put in the ground deep enough to hold them.   I saw the men at work making the hoops, and saw that they were staying inside the hoops while making them, but supposed they did so because they could pull more on the inside than they could push if they were on the outside.   It did not occur to me that standing on the inside and pulling was safer than standing on the other side and pushing.   I was in about four or five feet of the stob when it pulled out of the ground.   At the time I got hurt, they had not fastened the pole.   They had just got it to the stake and were fastening it down when the stob pulled out. I was not warned of the danger of working around the hoops'.'

Other evidence was adduced by appellee tending to corrob-

orate his testimony and to show the character and extent of his injuries.

Appellant adduced evidence tending to show that appellee in carrying the poles out at one time stepped over the hoops in the performance of his task, and had been warned not to do that any more, because it was dangerous. Other evidence for appellant tends to show that the stob did not pull out, but that the pole slipped from between the stobs and flew back and struck appellee breaking his leg.

Other evidence will be referred to in the opinion.

The jury returned a verdict for appellee, and the case is here on appeal.

*Coleman & Lewis*, for appellant.

1. The declaration of Taylor, alleged to have been made right after the accident, was a mere narrative of a past event, not an explanation accompanying and explanatory of an act, and was improperly admitted. 97 Ark. 422; Jones on Evidence, § 357; 58 Ark. 168; 66 Ark. 494; 78 Ark. 381.

The foregoing error is emphasized by the court's refusal to exclude from the jury the statement of appellee's attorney in his argument to the effect that the nonproduction of Taylor as a witness raised the presumption that his testimony, if he were produced, would be against appellant, whereas there was no evidence that he was working for appellant or was under its control, or in the jurisdiction of the court, at the time of the trial. This was prejudicial error. Jones on Evidence, § 21; 16 Cyc. 1062; 32 Ark. 346.

2. In case of a servant of mature years who is not deficient in understanding nor lacking in the ordinary experience of men in his station of life, the master is not required to point out dangers which are obvious, nor to ascertain whether the servant knows and appreciates such dangers. 1 Labatt on Master & Servant, § 238; *Id.* § 239; 132 N. W. (Wis.) 889; 76 Ark. 73; 97 Ark. 488; 96 Ark. 387; *Id.* 206; 93 Ark. 153; 82 Ark. 537; 73 Ark. 49; 58 Ark. 228.

*James A. Gray* and *George A. McConnell*, for appellee.

1. The statement of Taylor was admissible because (1) he was the agent of appellant and his statements bound

it, and (2) his statement was a part of the *res gestae.* 85
Ark. 479.

2.   In determining whether or not a servant assumes the
risks ordinarily incident to the service in which he engages,
the inquiry is whether on account of youth *or* inexperience he
does not know or appreciate the dangers of the service.   Inex-
perience brings a servant within the rule as effectively as youth-
fulness or physical infirmity.   53 Ark. 128; 90 Ark. 407; 84
Ark. 74-79; 81 Ark. 598; 91 Ark. 102.

HART, J., (after stating the facts).   Appellee testified
that Mr. Taylor was a servant engaged in the making of hoops,
and was standing about ten for twelve feet away when he was
injured.   Appellee said that Taylor came to him at once when
he was injured; and, when asked,   "What did he say?" an-
swered,   "He said if he had been doing his duty and making
them like he should have made them, it wouldn't have hap-
pened, and he wouldn't have had it happened for a hundred
dollars, and I was in so much pain I didn't pay any attention."

This testimony was permitted to go to the jury over the
objections of the appellant, and the action of the court in this
respect is now assigned as error.   We think the assignment
is well taken.

Counsel for appellee seek to uphold the ruling of the
court by the decision in the case of *Beal-Doyle Dry Goods Co.*
v. *Carr*, 85 Ark. 479.   There the excited declarations of a
child to his father while plaintiff was lying injured at the bot-
tom of the elevator shaft, and before he had been discovered,
that a man pushed the elevator door open and walked in,
were held to be admissible on the issue of whether the door
was left open or not.   The remark of Taylor was not compe-
tent.   It did not illustrate or explain how or what caused the
accident.   His statement was not so connected with the trans-
action as to characterize and be a part of it.   What Taylor
said could give character to nothing that happened.   It could
neither qualify nor explain it.   It was a mere narrative of a
past occurrence depending for its force and effect solely on
the credit of Taylor unconnected with the act done and re-
ceiving no credit or significance from the accompanying cir-
cumstances.   It was not therefore competent as original
evidence in the matter of *res gestae.   Fort Smith Oil Co.* v.

*Slover,* 58 Ark. 168; *Little Rock Traction & Electric Co.* v. *Nelson,* 66 Ark. 494; *Stecher Cooperage Works* v. *Steadman,* 78 Ark. 381; *St. Louis, I. M. & S. Ry. Co.* v. *Pape,* 100 Ark. 269; *Caldwell* v. *Nichol,* 97 Ark. 422.

The declaration was not made by an officer of appellant company, having the right to speak for it and bind it by declarations of that kind. It follows from the authorities that we have already cited that the declaration was improperly admitted, and was prejudicial to the appellant. In Jones on Evidence, § 357, the rule is stated as follows:

"The declaration of an employee or officer as to who was responsible for an accident, or as to the manner in which it happened, when made at the time of the accident or soon after, have been held incompetent, as against the company, on the ground that his employment did not carry with it authority to make declarations or admissions at a subsequent time as to the manner in which he had performed his duty; and that his declaration did not accompany the act from which the injuries arose and was not explanatory of anything in which he was then engaged, but that it was a mere narrative of a past occurrence."

It is next contended by counsel for appellant that the evidence did not warrant the verdict. In the case of *Arkansas Midland Ry. Co.* v. *Worden,* 90 Ark. 407, the court said: "When an employee takes service with his employer, he impliedly agrees to assume all the obvious risks of the business, including the risks of injury from the kind of machinery then openly used, as well as the method of operating the business then openly observed. * * * This is the rule which applies to an employee of mature years and experience in the particular work or business, for there is no duty on the part of the master to warn an experienced servant of obvious dangers, as they are among the ordinary incidents of the service, and he is bound to take notice of these, and must be presumed to have realized and appreciated such dangers * * * But the rule is different as to a servant who, by reason of youth or inexperience in the particular work, does not fully realize and appreciate the danger. In that case it is the duty of the master to give proper instructions and to warn the inexperienced servant of patent as well as latent dangers.

\* \* \* And, before the inexperienced servant can be presumed to have realized the danger and assumed the risk, it must be shown that he was instructed and warned of it."

Appellee was forty-five years of age, and was in possession of all of his faculties. He had lived in the country all his life, and was a farmer. The danger from a pole breaking as it was being pulled around in order to fashion it into a hoop was patent and obvious to any one. It may also be said that the danger arising from one end of the pole slipping out from between the stobs while the pole was being bent was an obvious and patent danger. The rule is that the master is not required to explain patent dangers which are ordinarily incident to the services, and which it may be reasonably expected under all the circumstances the servant can see and appreciate. But we do not think that the danger arising from one of the stobs pulling up was an obvious and patent one under the evidence detailed by appellee. He says that he had never seen any work of that kind done, and was wholly without experience as to the method of doing it; that he informed appellant of his ignorance and inexperience before he commenced to work for it. That appellant put him to work carrying poles and placing them in front of and a little to one side of the hoops. The stob in question which pulled up had only been driven down that afternoon and was pulled up while the first hoop was being made. Under these circumstances, the jury might have found that it was the duty of appellant to have informed appellee of the way he should travel to place the poles in the position where he was directed to put them, and to have instructed and to have cautioned him sufficiently to have enabled him to comprehend the danger of the stob pulling out. If the circumstances were such that the appellant owed it as the duty to appellee to instruct him, and it failed to do so, and appellee was injured on account of its failure to do so, appellant was liable in damages for the injury. On the other hand, a witness for appellant testifies that on one trip in carrying a pole appellee walked over the hoop, and that he was warned of the danger of so doing. Whether appellee knew or ought to have known what caution was necessary for him to use while walking along the path in the performance of his work of carrying the poles in order to avoid

the injury that he received, or appreciated the danger of the failure to use such caution, or had received the necessary instruction and warning before the injury, was properly a question for the jury.

Other assignments of error are pressed upon as for a reversal, but the views we have already expressed render it unnecessary to discuss them. The assignment in regard to the arguments of appellee's counsel before the jury is not likely to arise on a retrial of the case, and the principles of law that we have already announced will be a sufficient guide for the court in instructing the jury.

For the error in admitting the declaration of Taylor, the judgment will be reversed, and the cause remanded for a new trial.