St. Louis Southwestern Railway Company v. Wilson.

Opinion delivered May 31, 1915.

1. Railroads—death of person on track—lookout.—Deceased, who was very deaf, was killed by being struck by a moving train, while deceased was walking on the tracks, being struck from behind. *Held*, under the evidence it was a question for the jury, whether the engineer used every means possible to avoid the accident after discovering deceased's peril.

2. Railroads—death of person on track—uncontradicted evidence. —Where deceased was killed by being struck by a moving train, the testimony of the engineer that he stopped the train as quickly as possible after discovering deceased's peril; *held*, not to be uncontradicted.

3. Evidence—personal injury action—remark of railway engineer. —Deceased was killed by a moving train, after the accident the engineer said that if he had known it was deceased on the track, he would have stopped the train. Deceased was a former railway engineer and known to be very deaf. *Held*, while evidence of the remark was not admissible as part of the *res gestae*, still, under the facts of the case its admission was not prejudicial, in an action by deceased's widow to recover damages on account of negligence.

4. DAMAGES—WRONGFUL DEATH—AMOUNT.—When deceased was forty-seven years of age, able bodied, except for deafness, a former railway engineer, and a skilled mechanic and bookkeeper, a verdict of seven thousand dollars in favor of his widow is not excessive, when his death was due to the negligence of the servants of defendant railway.

Appeal from Calhoun Circuit Court; *C. W. Smith*, Judge; affirmed.

*Sam H. West* and *Gaughan & Sifford*, for appellant.

1. This case is not affected by the "lookout" statute," but falls under the rule governing liability in cases of discovered peril. Deceased was an admitted trespasser and guilty of gross negligence. The only question is, did the engineer exercise ordinary care to avoid the accident after he discovered the peril of deceased. There can be no recovery in the absence of reckless or wilful conduct of the company or its agents. 46 Ark. 513; 47 *Id.* 497; 50 *Id.* 483; 49 *Id.* 257; 93 *Id.* 579; 83 *Id.* 300; 90 *Id.* 278; 97 *Id.* 560; 91 *Id.* 14. The engineer did all that a man of ordinary prudence could, in view of his experience.

2. The testimony of Kirby and his brother was incompetent. This clearly was no part of the *res gestae* and was prejudicial.

3. The verdict is excessive. 57 Ark. 382. Deceased was earning nothing when he was killed and had not been earning anything for two years. He was an expense to his wife. No pecuniary loss is proven.

*Manning, Emerson & Morris*, for appellee.

1. The lookout statute is applicable to this case. Acts 1911, page 275. A railway company is liable for an injury resulting after the employees discovered the peril of deceased, but also where they should have discovered the peril in time to avoid the injury. Where one is seen upon the track and there is reason to believe that he is * * * *insensible of danger*, or unable to avoid it, the employees of a railway company have no right to presume that the person will get out of the way, but should use due care to avoid an injury. 48 Ark. 513; 102 *Id.* 417-421; 99 *Id.* 422.

2.  The testimony of Kirby and his brother was admissible as part of the *res gestae.* At any rate, it was harmless.

3.  The verdict is not excessive.  98 Ark. 507; 94 *Id.* 147; 88 *Id.* 352; 96 *Id.* 383; 83 *Id.* 133.

HART, J.  Appellant prosecutes this appeal to reverse a judgment against it in favor of appellee for damages for the alleged negligent killing of her husband by one of its passenger trains.  The facts proved by appellee are substantially as follows:

Appellee, Mrs. Lillian Wilson, is the widow of W. S. Wilson, who was killed near Texarkana, in Miller County, Arkansas, on February 28, 1914, by one of appellant's passenger trains.  Wilson was an old locomotive engineer and had been in the employ of appellant as such until about two years before he was killed. His sense of hearing was almost entirely gone, and for two years he had been engaged in trying to restore it.  At the time he was killed he was in the hospital of appellant at Texarkana, Arkansas, for the purpose of treatment, and had walked out on the railroad some distance from Kirby's Crossing, which was about two miles from Texarkana.  On his return to the city, he was struck and almost instantly killed by one of defendant's passenger trains near Kirby's Crossing.  There was a curve about a half mile north of Kirby's Crossing, and the train which struck deceased whistled as it came around the curve.  The track was straight from the curve to the crossing.

The train consisted of an engine and eight passenger coaches.  When it reached the whistling post, about a third of a mile from the crossing, the engineer again blew the whistle and some of the witnesses to the accident say that the engineer blew three sharp blasts when he was in about twenty feet of Wilson; that the train which struck Wilson projected him forward sixty or seventy-five feet; that they could not see that the train had checked its speed any at the time it struck Wilson; and that Wilson seemed to be entirely oblivious of the approach of the train and

was walking along the middle of the track with his head bent down.

There were six or seven little negro boys and girls between Wilson and the approaching train, traveling in the same direction. When the engineer blew the whistle at the whistling post these little negro children who were about one hundred yards ahead of the engine, immediately got off the track. The witnesses state that Wilson proceeded leisurely along and did not appear to notice the approach of the train until just immediately before it struck him; that he then attempted to jump off the track but the pilot beam of the engine struck him and knocked him sixty or seventy-five feet ahead of the train and that the train stopped in a distance of a little more than six hundred feet from the point where it struck Wilson.

One of the witnesses for appellee states that a short time before the trial he saw a train consisting of an engine and nine passenger coaches stop at about the place where Wilson was killed in order to avoid striking some cattle, that the train was going at a speed of about thirty-five to forty miles an hour, and that when the emergency brake was applied the train stopped within a distance of its own length. The train which struck Wilson was likewise running at a speed of thirty-five to forty miles an hour.

The engineer of the train which struck Wilson testified that the accident happened at a little past 10 o'clock in the morning and that as the train came around the curve he was running at a rate of forty miles an hour; that he blew the whistle as the train came around the curve and again blew it at the whistling post which was, as he stated, about a quarter of a mile from the crossing; that he saw the little negro children and Wilson walking along the track ahead of the train; that the little negro children were between Wilson and the train and that they got off the track when he blew the whistle at the whistling post; that he did not see anything in the appearance of Wilson to indicate that he was oblivious of the approaching train, and that he supposed he would get off the track

before the train reached him; that he had been an engineer on the road for a great many years, and that his experience before this time led him to believe that Wilson would get off the track; that when the train approached in four or five hundred feet of Wilson he blew three or four short blasts to warn Wilson of the approach of the train; that Wilson failed to get off the track and he then applied the emergency brake; that the train then ran about a thousand feet before it stopped; that it struck Wilson and carried him forward about seventy-five feet; that the condition of the engine was first class, the emergency brake working well, and that he did all he could to stop the train; that he expected the man to get off the track when he sounded the alarm whistle, and when he failed to do so he applied the emergency brake; and that the last he saw of Wilson he was about seventy feet ahead of the engine.

The fireman and the roadmaster, who was also on the engine, corroborated the statements of the engineer, and in addition the fireman testified that the whistle was kept blowing almost all of the time after they passed the whistling post, and that the bell was kept ringing after that time.   He said that the blasts were short and quick.

(1)   It is insisted by counsel for appellant that the above state of facts does not support the verdict of the jury, but we are of the opinion that the testimony made it a question for the jury as to whether or not appellant's servants engaged in the operation of its train exercised ordinary care, after discovering the perilous situation of the deceased, to avoid injuring him.   The evidence shows that Wilson was walking along in front of the approaching train with his head hanging down, and that he appeared to be wholly oblivious of the approach of the train. He had almost wholly lost his sense of hearing, and, of course, the jury were warranted in finding that he did not know that the train was approaching him until just before he was struck, when he attempted to jump off of the track. The engineer and fireman admitted that they saw the deceased walking along the track in front of the engine, but

said that this was a common occurrence and that they thought he would get off the track before the train reached him.    They testified that when they were in about four or five hundred feet of him they blew three short, sharp blasts of the whistle to warn him of his danger and that when they then saw that he did not realize his danger the engineer put on the brake in emergency and stopped the train as soon as he could.    He said that the train stopped a thousand feet from the point where the brake was applied and that he stopped as quickly as he could.

(2)    It can not be said that the testimony of the engineer and fireman was uncontradicted.    One of the witnesses for appellee testified that he saw about a week before the trial a train consisting of an engine and nine coaches stop within its own length at the very place where the injury under consideration occurred.    The train which struck Wilson was about five hundred feet long.    Therefore, this testimony tended to contradict the engineer in his statement that the train could not be stopped in a distance short of one thousand feet.

Another of the witnesses for appellee testified that the engine did not appear to have been checked at all at the time it struck Wilson and that the alarm whistle was not blown until the engine was in about twenty feet of Wilson.    This tended to contradict the testimony of the engineer to the effect that he blew the alarm whistle when the train was four or five hundred feet away from Wilson, and then immediately applied the brake in emergency.

It will be remembered that the fireman testified that the engineer blew the whistle for the crossing at the whistling post which was at least a quarter of a mile from the crossing; that the bell was ringing from that time and that the whistle was blown almost continuously until Wilson was struck.    This tends strongly to indicate that the engineer was apprised of the fact that Wilson was unconscious of the approaching train.    If he saw the little negroes run off the track as soon as he blew the whistle at the whistling post, and if, as stated by the fireman, he almost continuously blew the whistle from that time on,

the jury might have found that he necessarily saw that Wilson was not conscious of the approaching train and should have applied the brakes sooner than he did.

We think there was testimony of a substantial character to support the verdict. See *St. Louis, I. M. & S. Ry. Co.* v. *Scott*, 102 Ark. 417; *Memphis, D. & G. Ry. Co.* v. *Buckley*, 99 Ark. 422; *St. L., I. M. & S. Ry. Co.* v. *Wilkerson*, 46 Ark. 513.

(3) One of the witnesses for appellee stated that when the train was stopped he went to the place where Wilson was lying and heard the engineer say that if he had "known it was Scotty Wilson" he could or would have stopped the train. Counsel for appellant insist that this testimony was not part of the *res gestae*, but was a narrative of a past occurrence and was, therefore, improperly admitted in evidence. We agree with counsel that it was not part of the *res gestae*, but it is perfectly evident that no prejudice resulted to appellant from its admission. The engineer admitted that he saw a man walking on the track when the train came around the curve. This was a half mile from the crossing and from that time on the engineer saw the man walking along the middle of the track.

The deceased was an old engineer and had worked on appellant's road for many years. The engineer and other members of the crew of the train which struck him knew that he was almost wholly deaf, and the remark of the engineer meant no more than to say that if he. had known the man walking on the track was Scotty Wilson he would have stopped the train because he knew that Scotty Wilson was so deaf that he couldn't hear its approach. It simply meant that if he had known that a deaf man or a man oblivious of the approach of the train was walking on the track in front of it he would have stopped the train. The remark worked no prejudice whatever to the rights of appellant.

(4) Again, it is insisted by counsel for appellant that the verdict is excessive. The jury returned a verdict for $7,000, but we do not think it can be said to be exces-

sive.   At the time he was killed Scotty Wilson, except for his affliction of deafness, was a stout, able-bodied man, forty-seven years of age.   His life expectancy was 23.8 years.   In his youth he had been apprenticed as a machinist, and was also capable of being a bookkeeper. Though his affliction prevented his continuing at work as a locomotive engineer, it did not prevent his being a stationary engineer or working as a machinist.   The proof shows that the wages of a stationary engineer vary from $2 a day to $125 a month.   Wilson was well qualified to fill a position of that kind.   His wife testified that he was sober and industrious; that he was a man of frugal habits and that he gave her all of his wages except what was actually necessary to buy his own clothes.   She also testified that he nearly abandoned hope of regaining his hearing and that he contemplated engaging in work in a short time.   Under these circumstances, we do not think a verdict of $7,000 is excessive.

It follows that the judgment will be affirmed.