St. Louis-San Francisco Railway Company *v.* Vernon.

Opinion delivered February 4, 1924.

1. EVIDENCE—RES GESTAE—STATEMENT OF EMPLOYEE.—In an action against a railway company for the death of a child struck by a train, statement by the locomotive engineer to the mother, some time after the injury, as to the cause thereof, was inadmissible as not being part of *res gestae*, and because the engineer was not authorized to bind the company.

2. RAILROADS—FAILURE TO KEEP LOOKOUT—JURY QUESTION.—In an action for the death of a child struck by a train at a crossing, the question whether the railroad was negligent in failing to keep a constant lookout, *held*, under the evidence, to be for the jury.

3. RAILROADS—DUTY OF TRAINMEN TO KEEP LOOKOUT.—Under Crawford & Moses' Dig., § 8568, some one of the trainmen is required to keep a constant lookout to discover persons or property on the highway approaching the track.

4. DEATH—CONSCIOUS SUFFERING.—Evidence that an injured two-year-old child lived five days after the injury, took nourishment in liquid form, apparently recognizing her grandfather, had many convulsions, and on one occasion cried out, *held* to warrant the submission to the jury of the question whether she suffered conscious pain.

Appeal from Washington Circuit Court; *W. A. Dickson*, Judge; reversed.

*W. F. Evans* and *Warner, Hardin & Warner*, for appellant.

1. The court erred in submitting to the jury the question of failure to maintain a lookout. Where there is no evidence tending to prove a failure to maintain such lookout, it is reversible error to submit the question to the jury. 151 Ark. 34; 111 Ark. 134, 139. The testimony of the engineer and fireman was consistent and reasonable, and there was no evidence that either directly or inferentially contradicted them. 101 Ark. 532; 80 Ark. 396; 89 Ark. 574.

2. The court erred in quoting literally the lookout statute, in instructing the jury, without explaining its application. 149 Ark. 270, 284. There was an issue here as to the interpretation to be placed upon the statute,

in the fact that, while it imposes, by its literal terms, an absolute duty to keep a lookout, this court has held that such duty is limited to the exercise of ordinary care to maintain a careful lookout.   136 Ark. 246, 256. Instructions requested correctly limited the duty of keeping a lookout in this respect, and amounted to a specific objection to the instruction given.   153 Ark. 454, 462.

3.   It is error to assume facts, in instructing a jury, the existence of which is not proved.   71 Ark. 518; 152 Ark. 90; 87 Ark. 471.

4.   It was error to submit, as an element of damage in this case, conscious pain and suffering on the part of the child, without proof of such suffering.   82 Ark. 499; 106 Ark. 177; 90 Ark. 278; 138 Ark. 175; 68 Ark. 1; 158 Ark. 271.

5.   If, as the undisputed evidence shows, the defendant was not negligent in failing to keep a constant lookout, it was not negligent in failing to discover the child in a dangerous position near the track; and, if its presence could not and would not have been discovered in time to avert injuring it, by keeping a lookout, there can be no right of recovery.   113 Ark. 353, 358; 129 Ark. 80.

6.   The duty with reference to keeping a lookout is not imposed on all members of a train crew, but may be discharged by a single person, if he is in a position to do so as effectively as any other member of the train crew, and the jury should have been so instructed.   111 Ark. 309, 313, cases cited; 82 Ark. 503; 96 Ark. 213; 131 Ark. 150.

*Nance & Seamster,* for appellee.

1.   Unlike *Davis* v. *Scott,* 151 Ark. 34, relied on by appellant, the accident in this case occurred at a public crossing, which raised a presumption of negligence against the defendant, and the burden of proof was on it to show by a preponderance of the evidence that a constant lookout was kept.   C. & M. Digest, § 8568; 74 Ark. 606; 107 Ark. 431.   If the front brakeman was on his seat and looking ahead, the jury would have the right to infer

from the fact that he did not see the child that he was not keeping a constant lookout. 136 Ark. 246, 256. Merely looking ahead does not meet the requirements of the statute. It contemplates an efficient lookout. 78 Ark. 251; 63 Ark. 184; 62 Ark. 186; 57 Ark. 194.

' 2. The court was warranted by the evidence in giving the instruction submitting the question of conscious pain. 142 Ark. 593; 151 Ark. 549.

Humphreys, J. As the judgment in this cause must be reversed and remanded for a new trial on account of admission of incompetent testimony, only such matters will be discussed in the opinion as may be necessary for the guidance of the parties and court in a retrial of the case. The action was commenced in the circuit court of Washington County by appellee against appellant to recover damages in the sum of $2,999.99 to the estate and next of kin of the deceased, Helen Vernon, a child two years of age, for fatally injuring her, through the alleged negligence of the employees of appellant in failing to give the statutory signals as the train operated by them approached the wagon-road crossing, where the child was injured, and by failing to keep a constant lookout required by § 8568 of Crawford & Moses' Digest. The child was struck by a freight train coming from the north, and fatally injured, at a public road crossing about three miles south of Springdale. The parents of the child resided about one-eighth of a mile east of the road crossing. Without their knowledge or consent she wandered down the road to the place of the tragedy. After striking the child, the train was stopped, and the employees, except the fireman, who remained in the engine, went to the child. They removed her to a spring about seventy-five yards from the track, where the conductor washed her face. He called to a man who was passing, and was informed by him that the little girl was the daughter of the Vernons. He went to their home, and told Mrs. Vernon what had happened to her child. Mrs. Vernon told her husband, and they went with the conductor to the

child. Mrs. Vernon testified, over the objections and exceptions of appellant, that, when they reached the child, the engineer said to her, "Lady, I should have stopped on the other side, but I put on the brakes and they didn't hold." This testimony was not admissible.

The proper foundation was not laid in order to admit it for contradictory purposes.

The engineer's employment did not carry with it authority to make declarations or admissions, subsequent to the injury, relative to the manner in which it happened, which would be binding upon the company. *Ry. Co.* v. *Sweet,* 57 Ark. 287; *Stecher Cooperage Co.* v. *Steadman,* 78 Ark. 381; *Caldwell* v. *Nichol,* 97 Ark. 420; *River, R. & H. Const. Co.* v. *Goodwin,* 105 Ark. 247.

The statement was a narrative of a past occurrence and not a part of the *res gestae. St. Louis, I. M. & S. Ry. Co.* v. *Kelley,* 61 Ark. 52; *St. Louis, I. M. & S. Ry. Co.* v. *Pape,* 100 Ark. 269; *Webb* v. *Kansas City So. R. Co.,* 137 Ark. 107.

Appellant also contends that the court erred in submitting to the jury the question of its negligence for failure to keep a constant lookout. Its contention is based upon the claim that the undisputed evidence shows that a constant lookout was kept by some one of the employees of appellant as the train approached the public road crossing. We do not so interpret the evidence. D. C. Blakelee, the engineer, admitted that his view of the crossing was cut off thirty rods north of it, on account of the curve in the track. A. M. Bean, the fireman, testified that, after passing the Stockdale farm, which was about one-fourth of a mile north of the road crossing where the child was struck, he observed that the crossing was clear; that he then went to the deck of the engine to put in fire; that he left a brakeman in the seat, looking ahead; that in a minute or two the brakeman informed them that the engine had struck a child. The brakeman was absent from court on account of sickness, and did not testify as to whether he kept a constant lookout, and, if so, why he did not discover the child

before the train struck her., The jury may have inferred that he had not kept a constant lookout, else he would have seen the child in time to have prevented the injury. Several witnesses testified that objects at or near the road crossing could have been seen from the fireman's seat far enough back to have stopped the train before reaching it. Again, a number of witnesses contradicted the testimony of the employees to the effect that the whistle was blown for the crossing and the bell was ringing as the train approached it. The jury may have concluded that the employees falsified about the signals, and, on that account, disbelieved their testimony relative to keeping a constant lookout. For these reasons it was proper to submit this question of negligence to the jury for determination. Appellant insists, however, that the instructions submitting this issue imposed a higher duty upon the employees than the law required. In support of this contention, the case of *Bush* v. *Brewer*, 136 Ark. 246, is cited. Learned counsel for appellant interpret the language used in that opinion to mean that employees of a railroad need not keep a constant lookout to discover travelers on the highway approaching a train operated by them. Such a construction would have the effect of abridging the lookout statute, which requires that a constant lookout be kept for travelers approaching the train at public road crossings. The exercise of ordinary care to discover travelers, as used in the Bush case, meant that some member of the crew operating a train, in position to do so, must keep a constant lookout to discover travelers or property on the highway approaching the train, whether upon the track or not.

Appellant also contends that it was entitled to a peremptory instruction, under the claim that the undisputed evidence showed that it was impossible to discover the child in time to have prevented an injury had a constant lookout been kept. As before stated, testimony was introduced by appellee tending to show that objects could be seen at the crossing from the train, as it turned the curve, for a long distance. The testimony

therefore was conflicting upon this point, which made a question for the jury.

Appellant also contends that, according to the undisputed testimony, the deceased suffered no conscious pain, and that the court erred in submitting to the jury, as an element of damage, any conscious pain suffered by her. Hypodermic injections were administered by the attending physician to quiet and ease the child. During her illness she smiled at and seemingly recognized her grandfather. He testified that, on one occasion, she cried out. During her illness she took nourishment in liquid form. She had many convulsions. Those who waited upon her said that when they changed her position it seemed to quiet and ease her. She lived five days after the injury. We think this evidence warranted the submission to the jury of whether she suffered conscious pain.

Objection is made to the use of language in several of the instructions given by the court, seemingly submitting an issue to the jury of whether the train ran over the child. The language was, perhaps, inapt, as the evidence tended to show that the child was struck by some part of the engine, and not run over by it. Statements of the law to the jury should relate to the facts. We deem it unnecessary to say more with reference to these objections, as inaccuracies of this nature will likely be corrected when the trial court's attention is specifically called to them. For the error indicated the judgment is reversed, and the cause remanded for a new trial.