COCA-COLA BOTTLING COMPANY OF SOUTHWEST ARKANSAS *v.* CARTER.

4-6408                                          154 S. W. 2d 824

Opinion delivered October 20, 1941.

McRae & Tompkins, for appellant.

Jas. R. Bush and L. L. Mitchell, for appellee.

HUMPHREYS, J. This suit for damages by appellee against appellant was brought in the circuit court of Nevada county December 9, 1939, growing out of a collision after dark on October 11, 1939, between appellee's 1937 Ford sedan and appellant's truck and trailer, being driven by W. C. McMahan, its employee. The Ford sedan was being driven by appellee's son, Gerald Carter, and appellee was sitting on the front seat with him. The back seat was occupied by Tom Walker and two negro boys. They were en route to the county fair at Prescott having left Bluff City, the home and place of business of appellee, late in the afternoon, and came to the intersection of the highway with the Whelen Springs road and passed the Wynn filling station, situated in the forks of the two roads, where there was a rather sharp curve at the junction of said roads. The highway proceeds straight west for about 300 yards where it again curves to the right or northwest. The car and trailer collided on the straight stretch of the road between the two curves about 100 yards west of the junction and about 200 yards east of the other curve. As appellee's car went out of the junction curve a large truck and trailer belonging to appellant, and driven by W. C. McMahan, came out of the west curve going east. After coming out of the two curves, both vehicles were on a straight stretch of road proceeding in opposite directions, appellee going west and McMahan going east.

Appellee introduced evidence to the effect that W. C. McMahan was driving the truck and trailer on the wrong side of the road, or on his left side of the road; that Gerald Carter was driving on his right side of the road and when the truck and trailer did not move over to its right side of the road, Gerald Carter applied his brakes and pulled his car over against a ledge of gravel 12 inches high on his extreme right side of the road; that when McMahan was about 10 or 12 feet from the Carter car he pulled his truck sharply to the right and the front of the truck missed the Carter car, but the trailer which was fastened to the truck by what is called a "fifth-wheel" struck the Carter car about the left front light and demolished the left side of the car, the left front wheel being knocked off, the fender being torn off, the running board being mashed backwards and down to the ground; that at the time of the collision the Carter car was whirled around and almost headed in the opposite direction with the front end on the opposite side of the road near the ditch; that the truck went on down the highway about 75 yards and stopped near the junction of the highways and close to the filling station in the fork of the roads; that immediately after the wreck appellee was sitting straddle of a piece of wood or metal which comes up by the side of the seat of the car.

Appellant introduced testimony to the effect that the Carter car cut the curve and barely missed hitting the truck head-on, but after barely missing a head-on collision, the car cut back to its left, missed the front of the truck, but struck the front end of the trailer.

There is testimony in the record to the effect that after walking back to the Carter car in company with several parties who had come out of the filling station McMahan asked appellee and the others whether anyone was hurt and appellee stated to several parties there and at the filling station afterwards that he was not hurt. Appellee stayed at the Wynn filling station about one and one-half hours in conversation with parties who happened to be there and made no complaint to anyone that he was hurt and in stating that he was not hurt

said that he was frightened and that his car was badly torn up. His son and the others who were with him caught a ride and went on to the fair and appellee later returned to his home at Bluff City.

After W. C. McMahan stopped the truck at the filling station, he got out and joined several parties and went down to see about the condition of the car that had been struck by the trailer. Appellee testified that when McMahan came up to him he said, "Pat, I didn't know it was you. If I had known it was you, I wouldn't have run over you." None of the other witnesses present heard the statement made by McMahan and McMahan denied making the statement. This statement by McMahan was admitted in evidence over the objection and exception of appellant.

Several days after the collision, a Mr. Gibbons, an insurance adjuster, went to see appellee and appellee claimed that all he wanted was damages for his car. He did not tell the adjuster that he had received personal injuries and made no claim to him that he himself had been injured. An estimate was made of the damages to the car which amounted to $206, but when the adjuster went to see appellee two or three days thereafter he demanded a new car. The adjuster declined to buy a new car for him because he said the damaged car was a 1937 model with 11,600 miles on the speedometer and, in addition, that it was not a total loss. Some six or seven days after the wreck and after the insurance adjuster declined to give appellee a new car, appellee claimed that he had received a personal injury in the wreck.

In bringing the suit two months after the collision appellee made W. C. McMahan a co-defendant with appellant, but never obtained any service upon him.

In the complaint appellee alleged that the collision was occasioned solely by the joint and concurrent negligence of appellant and McMahan because McMahan was driving at a high and dangerous rate of speed; that he failed to stop when he could have done so; that he was driving on the wrong side of the road and also alleged that he received serious, painful and permanent

injuries for which he should recover $30,000 and also damages to his car for which he should recover $600.

On June 20, 1940, appellee filed an amended complaint alleging an injury to his coccyx resulting in coccygodynia and a loss of sexual power.

W. C. McMahan filed no answer.

Appellant filed a separate answer denying each and every material allegation in the complaint and alleging that whatever injury appellee may have sustained was caused by the negligent driving of appellee's own car at a high, reckless and dangerous rate of speed and also that appellee's car was on the wrong side of the road.

The cause was submitted to a jury upon the pleadings, testimony introduced by the parties and instructions of the court resulting in a verdict and consequent judgment against appellant in the sum of $10,000, from which is this appeal.

There is a sharp conflict in the testimony as to whether appellant, through its admitted agent, W. C. McMahan, was on the wrong side of the highway and failed to pull over to his side of the road until the cars were between 10 and 20 feet apart, and that when he did attempt to pull over to his side of the road it was too late to prevent his trailer from hitting appellee's car.

The testimony was also in sharp conflict as to whether either or both of the drivers, under the circumstances, was or were driving at a reckless rate of speed and in a dangerous manner.

We deem it unnecessary to set out and analyze the testimony in an attempt to reconcile the conflicts therein and content ourselves with saying that, after carefully reading the evidence, we have concluded that there is sufficient testimony of a substantial nature to warrant the jury in finding that appellant was to blame for the collision. It was exclusively within the province of the jury to settle the disputed question of fact as to whether appellant was guilty of negligence, and having done so, on appeal, this court will not disturb the verdict as to liability.

Appellant contends, however, that the trial court erroneously admitted in evidence the statement of W. C. McMahan, attributed to him by appellee, a short time after the collision, which statement is as follows: "Pat, I didn't know it was you. If I had known it was you, I wouldn't have run over you." Appellant argues that this statement was not admissible as against it unless same was a part of the *res gestae* under the rule announced in the following cases and note: *St. Louis Southwestern Ry. Co.* v. *Wilson,* 119 Ark. 36, 177 S. W. 415; *Itzkowitz* v. *P. H. Ruebel & Co.,* 158 Ark. 454, 250 S. W. 535; *Liberty Cash Grocers* v. *Clements,* 193 Ark. 808, 102 S. W. 2d 836; *St. Louis-San Francisco Ry. Co.* v. *Vernon,* 162 Ark. 226, 258 S. W. 126; *Little Rock Traction Co.* v. *Nelson,* 66 Ark. 494, 52 S. W. 7; *River, R. & H. Construction Co.* v. *Goodwin,* 105 Ark. 247, 151 S. W. 267; case note 130 A. L. R. 291.

We do not think the statement made by McMahan is a part of the *res gestae.* At the time it was made the accident was over. The truck and car had stopped 100 yards or more away from each other, one east and the other west of the point of contact. All parties had gotten out of the truck and car. All had examined the damage done. Two men had come from the filling station with McMahan and these men had walked up the road approximately 100 yards or more when the statement was made. It was, therefore, clearly not a part of the *res gestae* nor admissible in evidence on that theory. It was not even admissible against W. C. McMahan because McMahan while named a party co-defendant was never served with summons and never filed any pleadings in the suit. It was not admissible in contradiction of the testimony of appellee as appellee had not then been on the witness stand.

Although it was an error to admit this statement, it was not prejudicial for the reason that there was ample substantial evidence in the record aside from this piece of evidence tending to establish liability against appellant resulting from the collision.

It is true that this piece of evidence may have influenced the jury to return a larger verdict than they

would have done had the evidence not been introduced. Of course, for a man to say he intentionally ran over a person would influence a jury to return a larger verdict than had it been unintentional. This error so far as it affects the excessiveness of the verdict may be remedied by a reduction of the amount and need not necessarily bring about a reversal of the case.

There are some other questions of evidence presented but we do not regard them of sufficient importance to work a reversal of the judgment.

We have also examined the instructions given and refused and think those given were clear declarations of law applicable to the facts and those refused did not constitute errors for which the judgment should be reversed. We think upon the whole the jury were instructed fully and clearly on all the issues involved in the case.

We now come to a point which has given the court grave concern. We think it next to impossible for appellee to have received the injury to his coccyx in the manner described by him and we are unable to see how he could have gotten astride the little "rounded, one-half inch thick hard piece that comes on the side of the car seat." An injury of this kind according to the doctors causes excruciating pain and causes it immediately. Not only did appellee not suffer excruciating pain immediately after the collision, but he told others that he was not injured in any way, that "I did not get hurt, but I had the hell scared out of me." He continued for several days to tell his neighbors and friends that he did not get hurt and he told the insurance adjuster that all he wanted was a new car. After the insurance company refused to get him a new car he then began to talk about his injuries and he never claimed any injury to his coccyx until June, 1940, at which time he amended his complaint.

Up until that time he had only claimed pains and aches and suffering in his limbs, back, etc. There is much evidence in the record tending to show that most of his trouble was due to Bright's disease and high blood pressure. We think that there is no substantial

evidence in the record that at the time of the collision he received the injury he now complains of and that the circumstances that he did receive such an injury are all against appellee. He emphatically denied all injury for several days. The record is replete with evidence that one receiving a fractured coccyx would know it immediately because the pain therefrom would be acute and excruciating. In fact in ordinary life one knows this to be a fact. It is unnatural for one who has received an injury to the coccyx in a collision to say "Hell, no, I ain't hurt." His statement to this effect and his conduct and actions thereafter do not indicate that he received a fractured coccyx at the time of the collision. His very belated claim that he did receive such an injury is out of the ordinary and we do not regard the evidence in support of such a theory as substantial. We think the statement of W. C. McMahan which was admitted to the effect that he had purposely run over the party he had met in the road unduly influenced the jury in determining the amount he should recover. The statement should not have been admitted but, as stated above, the error committed in admitting it can be cured by a remittitur from the $10,000 judgment down to a judgment for $1,000. The judgment is, therefore, reduced from $10,000 to $1,000 and, as reduced and modified, is affirmed.